PECK and another *against* ABBE and another.

Though the admission of the parties to testify in book debt, is founded on a supposed necessity; yet this necessity is not the necessity of the individual case on trial, but of the class of cases to which it belongs.

Though the parties in book debt are not unlimited witnesses; yet the rule restricting their testimony to the quantity, quality and delivery of the articles charged, however plausible in theory, has not been sanctioned by practice or established by precedent.

If there be any general rule, it is, that where proper articles are charged on book, the parties, *quoad* the book debt, are admissible, like all other witnesses, to testify freely and fully in support or confutation of the account.

In an action of book debt, brought by *A* against *B* and *C*, as partners, for goods delivered and charged to *B*, *C* denied the partnership; to prove which, *A* introduced a writing signed by *C*, accompanied by proof that he frequented the shop and made entries in the books, and that his name appeared on a sign in front of the shop To disprove such partnership, *C* then offered himself as a witness, to testify, that he was not a partner; that the writing was never delivered, but was obtained surreptitiously; and to explain why he frequented the shop, and wrote in the books, and suffered his name to appear upon the sign. Held, that such testimony of *C* was admissible, as going to disprove the plaintiff's account and the delivery of the goods to *C*.

THIS was an action of book debt for goods sold and delivered, against *Alanson Abbe* and *Anson Wildman*. *Abbe* only appeared, and pleaded the general issue.

The cause was tried at *Litchfield, August* term, 1835, before *Waite,* J.

*Wildman* went into business, as an apothecary and druggist, in the village of *Litchfield,* in *December,* 1833; and the plaintiffs afterwards sold to him the goods charged in their account, which went into his shop, and became part of the stock of goods with which he carried on business. The goods were charged on the plaintiffs' books to *Wildman* alone. At the trial, they claimed, that *Abbe* was a secret partner with him. In support of this claim, they exhibited in evidence a writing signed by *Abbe,* accompanied by proof that he frequented the shop and did business there; that he made charges in the books; and that his name appeared upon a sign before the shop, throughout the period during which *Wildman* did business there. To disprove such partnership, *Abbe* then offered himself as a witness, to testify that he never was connected in business as a partner with *Wildman;* and that said writing

was never delivered to *Wildman*, but was surreptitiously obtained; also, to explain why he frequented the shop, and wrote in the books, and suffered his name to appear upon the sign before the shop. The plaintiffs objected to the admission of *Abbe* as a witness, for these purposes. The judge sustained the objection; and the testimony offered was accordingly excluded.

The jury returned a verdict for the plaintiffs; and the defendant, *Abbe,* moved for a new trial.

*P. Miner* and *T. Smith,* in support of the motion, contended, 1. That the defendant *Abbe* was a competent witness, in this action, to prove the non-delivery of the writing. His testimony was within the rule laid down by Ch. J. *Hosmer,* in *Bryan* v. *Jackson,* 4 *Conn. Rep.* 288. that "when proper articles are charged on book, the parties, *quoad* the book debt, are admissible, like all other witnesses, to testify freely and fully in support or confutation of the account." The purport of the testimony was, that the goods were not sold and delivered to the defendant *Abbe,* by reason of the fact that he was not in partnership with *Wildman.* Why may not *Abbe* as well testify to the non-delivery of a writing, which, if delivered, would shew, that he had the articles charged, as to testify to the non-delivery of the articles themselves? The case is, therefore, within even the restricted rule suggested by Judge *Ellsworth,* in *Phenix* v. *Prindle, Kirby* 209. that "the testimony of the parties regularly goes no farther than to the quantity, quality and *delivery* of the articles charged." The following cases were referred to and commented on. *Bradley* v. *Goodyear,* 1 *Day,* 104. *Stocking* v. *Sage,* 1 *Conn. Rep.* 75. *Beach* v. *Mills,* 5 *Conn. Rep.* 493. *Terrill* v. *Beecher,* 9 *Conn. Rep.* 344. *Weed* v. *Bishop,* 7 *Conn. Rep.* 128. *Cook* v. *Bradley,* 7 *Conn. Rep.* 57. *Rann* v. *Hughes* & al. 7 *Term Rep.* 350. n. *Barnum* v. *Barnum,* 9 *Conn. Rep.* 242.

2. That the testimony of *Abbe* was admissible to repel the evidence offered by the plaintiffs, that he had frequented *Wildman's* shop and made entries in the books. No rule has ever been laid down as to the competency of the parties in book debt, that would exclude this proof.

*W. W. Ellsworth* and *O. S. Seymour,* contra, contended,

that the defendant *Abbe* was not an admissible witness, in this action, to disprove the partnership. To establish this general proposition, they urged the following considerations.

In the first place, it is well settled, and seems to be admitted, on all hands, that in an action of book debt, the parties are not *unlimited* witnesses. This was so, by the common law of *Connecticut*, prior to any legislative enactment on the subject. Our statutes have not attempted to enlarge the right of the parties, but have left it as it stood under our common law. *Phenix* v. *Prindle*, Kirby 209. *Bryan* v. *Peck*, 4 *Conn. Rep.* 288. *Weed* v. *Bishop*, 7 *Conn. Rep.* 129. *Terrill* v. *Beecher*, 9 *Conn. Rep.* 344.

Secondly, the evidence in question related to a matter *collatteral* to the account.

Thirdly, the oath of the party is merely *ancillary* to the book. But this evidence does not go to support the book ; and the book does not operate as a check on such evidence.

Fourthly, the admission of the parties to testify, is founded on the supposed *necessity* of such testimony. But here the supposed necessity fails ; for a partnership may be proved, by common law testimony, in an action on book, as well as in *assumpsit*. 9 *Conn. Rep.* 348. 5 *Conn. Rep.* 496.

Fourthly, in all cases where the oath of the party is not warranted, by the necessity of the case, and is unsupported and unchecked, by the book, its admission is highly dangerous.

Fifthly, though the precise case of a partnership has not been decided in our courts, yet we have recent decisions in other cases strictly analogous, and equally strong in principle. In the case of *Beach* v. *Mills*, 5 *Conn. Rep.* 493., it was decided, that the parties were not competent to testify to an agreement concerning the use and occupation of real estate ; and in *Terrill* v. *Beecher*, 9 *Conn. Rep.* 344., it was decided, that the parties could not testify to the entering into and violation of a parol contract of apprenticeship.

WILLIAMS, Ch. J. The plaintiffs, having proved the delivery of the goods to one of the defendants, attempt to charge the other, *Abbe*, by connecting him, as a partner, with *Wildman*, by his conduct and by his writings. The defendant *Abbe*, on his part, proposes, by his own testimony, to explain these acts, and show, that there is no such writing in existence,

or that it was never delivered. The plaintiffs say, this cannot be done; that the parties are not unlimited witnesses; that these are enquiries collateral to the book; and that the parties, therefore, cannot testify regarding them. They further claim, that as the action of book debt originated only from necessity, it ought not to be extended further than the necessity requires; and that the rule is, that the parties can testify only to the quantity, quality and delivery of the goods.

These objections will each be considered, though not in this precise order. That the action of book debt is, in some measure, peculiar to *New-England*, is admitted; though in other states, under certain limitations, they admit parties to testify to their accounts. That it is founded upon a supposed necessity, arising from the peculiar situation of the parties, and perhaps, in some measure, upon the solitary circumstances of individuals in a new country, may be also admitted. But this necessity is not the necessity of the individual case on trial, but of the class of cases to which it belongs. One man sells a bushel of corn to his neighbour, no other being present; he charges it on his book; and could never recover, unless his book, or his oath, or both, were sufficient evidence. Necessity, therefore, requires this evidence. Another sells corn to his neighbour, surrounded with his family; of course, the same necessity of his oath, or book, does not exist. Still the charge is of the same class with the other, and may be supported in the same way. So far as it regards the testimony, therefore, the enquiry is not, whether the party in that case could not have other testimony, but whether the case itself is of the class or character, which will support this action. The cases of *Bradley* v. *Goodyear*, *Beach* v. *Mills*, and *Terrill* v. *Beecher*, cited by the plaintiffs, are of the last class, and *Bryan* v. *Jackson*, 4 *Conn. Rep.* 288., is of the former. If, therefore, the plaintiffs' action is adapted to their case, the question as to the testimony of the parties will depend upon other circumstances than its necessity, although if that is important, it is very apparent, that when a secret partnership is to be proved, facts may exist within the knowledge of the plaintiffs, known only to them, and upon faith of which the credit was given, all-important to the event of the cause.

It is further objected to the testimony of the defendants, that the testimony of the parties is not unlimited, but that it is confined to the quantity, the quality and the delivery of the goods.

*Litchfield,*
*June, 1836.*

Peck
*v.*
Abbe.

That the parties are not unlimited witnesses, is perfectly clear. They cannot testify to a tender, a release or waiver of the statute of limitations; for such testimony is not *quoad* the book debt, nor in support or confutation of the account. *Weed* v. *Bishop,* 7 *Conn. Rep.* 132. On the other hand, the rule laid down in *Phenix* v. *Prindle,* that the party can testify only to the quantity, quality and delivery of the articles charged, though it would seem correct in theory, has not been regarded in practice. On the contrary, Ch. J. *Hosmer* says, "conformable as it is to principle, it has not the support of precedent or practice." *Daggett,* J. says, "a more extended construction has been given to the statute." 4 *Conn. Rep.* 292. 7 *Conn. Rep.* 131. If a rule proposed by the comprehensive mind from which this emanated, has been found inadequate to meet the various cases that have since arisen, it may be in vain to attempt a general rule upon the subject. The one proposed by the late Ch. J. *Hosmer,* and sanctioned by this court, is, that when proper articles are charged on book, the parties, *quoad* the book debt, are admissible, like all other witnesses, to testify freely and fully in support or confutation of the account. *Bryan* v *Jackson,* 4 *Conn. Rep.* 292.

In the case before us, the plaintiffs deduced evidence of the existence of the partnership from the conduct of the defendant *Abbe,* and from his entries. He certainly best knew himself as to the cause of his visits to the shop, and the motives of his conduct. These being thus drawn in question, it is difficult to see why the defendant *Abbe* should not be permitted to explain them.

If the plaintiffs may prove the partnership, by their oath, the defendant may deny it, upon his oath. It has been decided, long since, and recently confirmed, by this court, that a plaintiff in book debt may support his account, by his own oath, as to the admissions of the defendant. *Johnson* v. *Gunn,* 2 *Root,* 130. *Bryan* v. *Jackson,* 4 *Conn. Rep.* 288. The plaintiffs, then, might have been admitted to testify, that the defendants told them they were partners. The defendants then, of course, must have been admitted to deny it, and to state facts inconsistent with it. As the plaintiffs could swear to the defendants' admissions, could they not testify to other circumstances tending to the same result; such as these—that they often saw the defendant at the shop, waiting upon cus-

tomers, and writing in the books, and doing other acts common to owners? Such facts have an important bearing upon the great fact in controversy, *viz.* that the goods are properly charged. And if the plaintiffs could swear to these facts, in support of their claim, it can hardly be contended, that the defendants could not be permitted to controvert them, by their oaths.

It was also claimed, that the partnership was proved, by a written agreement; and it is asked, shall the defendant, by his own testimony, be permitted to destroy its effect? Certainly not, if that agreement is proved; but that is the point in dispute. The defendant *Abbe* says, there never was such an agreement; it was never completed, because it was never delivered. How would it be, if instead of this agreement, the plaintiffs had founded their claim upon an order from the defendant, which he denied? He says, he never gave such an order. Would it be doubted, that he might testify to that fact? Might he not testify, that it was a forgery, or taken feloniously, or extorted by duress. The plaintiffs could swear, that they delivered the goods, upon his order, to his servant. Surely, then, the defendant must be permitted to deny the delivery, to his order, or to his servant, as well as to himself. If goods are delivered to a woman, calling herself wife of the defendant, cannot he testify, that she was not his wife? Or if the question were, whether the goods were necessaries for a wife or child, might not the defendant testify, that they were amply supplied with necessaries? All the evidence on that subject is tending to prove, or disprove, the delivery of the goods to the *defendant;* and is, therefore, within the principle laid down in *Phenix* v. *Prindle.*

Again, it is said, that the partnership agreement is collateral to the principle question in this case. If so, how is it that the plaintiffs have introduced this agreement, on their part? Look at the facts. The goods in question were delivered to the defendant *Wildman;* but the plaintiffs' claim is against *Wildman* and *Abbe.* To prove the delivery to *Abbe,* the plaintiffs resort to proof that the delivery to *Wildman,* is a delivery to *Wildman* and *Abbe;* and for that purpose, introduced this agreement. That, then, is the authority upon which this charge is made; it is the voucher of the plaintiffs' book; it is the pillar upon which the plaintiffs rest their cause. How, then, can

it be said to be collateral to the main inquiry ? It is rather a part of it ; just as a verbal direction or a written order from *Abbe* would have been void without it. There is no proof of a delivery.

It is, then, to use the language of Ch. J. *Hosmer*, proof *quoad* the book, going directly to support it, and to justify the plaintiffs' charge ; and if this court were right in the opinion they gave in *Bryan* v. *Jackson*, that when proper articles are charged upon book, the parties, *quoad* the book, are admissible to testify freely and fully, in support or confutation of the account, then *Abbe* should have been admitted to confute this account of the plaintiffs, by his own testimony, as to the most essential fact to be made out by the plaintiffs, as to the delivery of the goods to him. This not having been done, the court are of opinion, that a new trial must be granted ; and so advise the superior court.

The other Judges concurred—Church and Waite, Js. with some hesitation.

New trial to be granted.