## RAMON RIBAS *vs*. REVERE RUBBER CO.

### JULY 10, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Evidence.   Private Writings and Publications.*

In a personal injury action, the record of a hospital kept by an interne in the course of his duty, showing facts relating to the plaintiff when a patient, some of the facts being communicated to him by his associates and subordinates and others coming under his personal observation, the record being written up by him every third day; was admissible in evidence on behalf of defendant when offered in connection with evidence that the writer was without the state and that the record was in his handwriting.

*(2)   Evidence.   Private Writings and Publications.*

The admissibility of a record does not depend upon its requirement by law. It is sufficient if it is kept by some person in the regular course of his occupation or business. It is only necessary that the keeping of such record should be a natural concomitant of the transaction to which it relates.

*(3)   Evidence.   Private Writings and Publications.*

While the admissibility of a private record depends upon the entries being made contemporaneously with the facts to which they relate, this does not require that the record must be made at the moment of the occurrence, but within such time thereafter as would reasonably make it a part of the transaction.

*(4)   Evidence.   Private Writings and Publications.*

An entry made by one person in the regular course of business, recording an oral or written report made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, is admissible.

*(5)   ·Evidence.   Private Writings and Publications.*

A private record recording oral or written reports to the person making the record is not inadmissible because the facts recorded were capable of proof by those making the reports since the two sources of testimony are distinct each having a value independent of the other.

*(6)   Negligence.   Aggravation of Injury.*

In a personal injury action where there was evidence of physicians that in their opinion the behavior of plaintiff might have aggravated his injury, which evidence it was proper for the jury to consider in determining whether or not the failure to obtain the best result was to some extent due to such behavior, it was error for the court to charge that the jury must find as an affirmative fact that the acts of the plaintiff had caused an aggravation of the injury or dismiss the claim from their consideration.

*(7)   Negligence.   Law of the Road.*

In a personal injury case the court charged in substance that if defendant was at the time of the accident traveling on the left of the road, he assumed the risk of so doing and was required to use greater care than if he had been traveling on the right side.

*Held*, error, since defendant had the right to pass to the left of the team in front of him, and would not be responsible for a collision with one coming from the opposite direction if in doing so, he acted with such due care as the time, place and circumstances demanded of him.

*(8)   Negligence.   Law of the Road.*

In a personal injury case, charge of the court "If you find that plaintiff was riding on his right side of the highway in the exercise of ordinary care, and the driver of the truck suddenly drove it to the left side of the highway in an effort to pass a team in front of him, and the plaintiff was unable to get out of the way of the truck owing to the suddenness of defendant's approach in front of him, by the exercise of ordinary care, then defendant is liable."

*Held*, no error.

JOHNSON, C. J., AND SWEETLAND, J., dissenting.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant and sustained, in part.

VINCENT, J.   This is an action of trespass on the case for negligence and is now before this court upon the defendant's bill of exceptions.   The case was tried in the Superior Court to a jury and a verdict was rendered for the plaintiff in the sum of $5,000.   Thereafter the defendant filed its motion for a new trial which motion was denied, whereupon it filed its bill of exceptions, embracing the following twenty-one assignments of error:

"1.   To a certain ruling of said Justice at said trial admitting certain evidence objected to by the defendant, as shown on page 238 of the transcript of testimony, etc., filed herewith.

"2.   To a certain ruling of said Justice at said trial admitting certain evidence objected to by the defendant, as shown on page 274 of the transcript of testimony, etc., filed herewith.

"3.   To a certain ruling of said Justice at said trial excluding certain evidence offered by the defendant, as shown on page 377 of the transcript of testimony, etc., filed herewith.

"4. To a certain ruling of said Justice at said trial, admitting certain evidence objected to by the defendant, as shown on pages 451 and 452 of the transcript of testimony, etc., filed herewith.

"5. To a certain ruling of said justice at said trial, admitting certain evidence objected to by the defendant, as shown on page 456 of the transcript of the testimony, etc., filed herewith.

"6. To a certain ruling of said Justice at said trial, admitting certain evidence objected to by the defendant as shown on page 494 of the transcript of testimony, etc., filed herewith.

"7. To a certain ruling of said Justice at said trial, refusing to give to the jury defendant's request to charge number one, the exception appearing on page 516, and the said request to charge on page 525 of the transcript of testimony, etc., filed herewith.

"8. To a certain ruling of said Justice at said trial refusing to give to the jury defendant's request to charge number two, the exception appearing on page 516, and the said request to charge on page 525 of the transcript of testimony, etc., filed herewith.

"9. To a certain ruling of said Justice at said trial, refusing to give to the jury defendant's request to charge number three, the exception appearing on page 516, and the said request to charge on pages 525 and 526 of the transcript of testimony, etc., filed herewith.

"10. To a certain ruling of said Justice at said trial, refusing to give to the jury defendant's request to charge number four, the exception appearing on page 516, and the said request to charge on page 526 of the transcript of testimony, etc., filed herewith.

"11. To a certain ruling of said Justice at said trial refusing to give to the jury defendant's request to charge number five, the exception appearing on page 516, and the said request to charge on page 526 of the transcript of testimony, etc., filed herewith.

"12.   To the giving of a certain portion of the charge to the jury by said Justice at said trial, which part and the exception thereto are set forth on page 520 of the transcript of testimony, etc., filed herewith, lines 7 to 11, inclusive, said part also appearing in the charge by said Justice on page 519 of the transcript of testimony, etc., filed herewith.

"13.   To the giving of a certain portion of the charge to the jury by said Justice at said trial, which part and the exception thereto are set forth on page 520 of the transcript of testimony, etc., filed herewith, lines 12–15, inclusive, said part also appearing in the charge by said Justice on pages 508 and 509 of the transcript of testimony, etc., filed herewith.

"14.   To the reading to the jury by said Justice at said trial during his charge to said jury of certain portions of the decision of the Supreme Court of the State of Rhode Island in the case of *Angell* v. *Lewis*, the exception thereto being set forth on page 520 of the transcript of testimony, etc., filed herewith, lines 24–26, inclusive, said portions appearing on pages 508 and 509 of the transcript of testimony, etc., filed herewith.

"15.   To the giving of certain instructions to the jury by said Justice at said trial at the request of the plaintiff, namely, the plaintiff's second request to charge as modified by said Justice, the exception thereto appearing on page 520, said plaintiff's request to charge number two on page 522, and said plaintiff's request to charge number two as modified by said Justice and given to the jury on page 517 of the transcript of testimony, etc., filed herewith.

"16.   To the giving of certain instructions to the jury by said Justice at said trial at the request of the plaintiff, namely, the plaintiff's third request to charge, the exception thereto appearing on page 520, said plaintiff's request to charge number three on page 522, and said plaintiff's request to charge number three, as given to the jury by said Justice on page 517 of the transcript of testimony, etc., filed herewith.

"17.   To the giving of certain instructions to the jury by said Justice at said trial at the request of the plaintiff,

namely, the plaintiff's fifth request to charge as modified by said Justice, the exception thereto appearing on page 520, said plaintiff's request to charge number five on page 523, and said plaintiff's request to charge number five as modified by said Justice and given to the jury on page 518 of the transcript of testimony, etc., filed herewith.

"18.   To the giving of a certain portion of the charge to the jury by said Justice at said trial, which part and the exception thereto are set forth on page 521 of the transcript of testimony, etc., filed herewith, line three, said part also in the charge of said Justice, being paragraph 'First' at line 8 on page 515 of the transcript of testimony, etc., filed herewith.

"19.   To the giving of a certain portion of the charge to the jury by said Justice at said trial, which part and the exception thereto are set forth on page 521 of the transcript of testimony, etc., filed herewith, line three, said part also in the charge of said Justice, being paragraph 'Third' at line 21 on pages 515 and 516 of the transcript of testimony, etc., filed herewith.

"20.   To the giving of a certain portion of the charge to the jury of said Justice at said trial, which part and the exception thereto are set forth on page 521 of the transcript of testimony, etc., filed herewith, lines 4 to 8, inclusive, said portion also appearing in the charge of the said Justice on pages 514 and 515 of said transcript of testimony, etc., filed herewith.

"21.   To the decision of said Justice denying defendant's motion for a new trial, which motion was based upon the following grounds:"

The several questions which the defendant argues under its bill of exceptions are more particularly set forth in its brief, as follows:   (1)   That the hospital record showing clearly the misconduct of the plaintiff at the hospital which, to some extent, precluded a satisfactory recovery from his injuries should have been admitted in evidence;   (2) that the trial justice charged the jury improperly as to the plain-

tiff's misconduct at the hospital; (3) that the trial Justice instructed the jury improperly as to the law of the road as applied to the facts of this case;

> "A.   It was error for the court to charge that the statutory rule of the road in case of one vehicle overtaking another does not affect the rights and duties towards vehicles approaching from the opposite direction.
>
> "B.   It was error for the court to charge that, if the defendant was at the time of the accident traveling on the left of the road, he assumed the risk of so doing and was required to use greater care than if he had been traveling on the right side.
>
> "C.   It was error for the trial Justice to charge that, if at the time of the accident the defendant was on the left of the road, he would be liable for all injury flowing exclusively therefrom.
>
> "D.   It was error for the court to include in its charge the quotations from the opinion in the case of *Angell* v. *Lewis*, 20 R. I. 391.
>
> "E.   It was error for the trial Justice to refuse to grant the defendant's first, second, third and fourth requests to charge.
>
> "F.   It was error for the trial Justice to grant the plaintiff's fifth request to charge."

(4) the trial Justice erred in denying the defendant's motion for a new trial; and (5) the damages were excessive.

The plaintiff's declaration consists of one count. He alleges that on June 14, 1912, he was riding a bicycle easterly along Point Street, in the city of Providence, when an auto truck near the boundary of Point Street Bridge, traveling westerly, was driven so carelessly by the defendant's chauffeur that it ran into him, throwing him to the ground, as a result of which he sustained a fracture of the left leg between the hip and the knee.

It appears from the evidence that about six o'clock, on the afternoon of June 14, 1912, the defendant's auto truck, used for carrying merchandise, was being driven in a westerly direction over the Point Street Bridge and was being operated by one Alexander J. Lodge, one of the defendant's employees. Another employee of the defendant, Arthur Berry, was upon the truck with Lodge at the time. In proceeding across the bridge the truck traveled at a low rate of speed along the northerly side thereof and behind a two-horse wagon, the horses being driven at a walk. When the wagon in front reached a point near the west end of the bridge, having already passed the gates at the west end of the draw and also the joist set in the middle of the bridge to separate the driveways, Lodge sounded his horn, shifted his speed from first to second and started to pass on the left of the wagon in front of him. While thus attempting to pass the team in front, a collision took place between the truck and the plaintiff who was riding a bicycle in an opposite direction. The collision resulted in throwing the plaintiff to the ground and inflicting upon him injuries for which he now seeks to recover damages. At the westerly end of the bridge, where the asphalt pavement and the granite block pavement meet, the roadway for vehicles is 24′ 10″ in width and this width continues across the bridge to the east. In a westerly direction from the bridge, the roadway widens gradually on the north side until it reaches a width of 32′ 4″. It then commences to widen on the south side and finally reaches a width of 40′, that being the full width of Point street. The distance from the westerly boundary of the asphalt to the point where the street obtains its full width is 38′ 4″. The accident occurred near the boundary between the granite blocks and the asphalt pavement. The defendant's truck was about 6′ wide and probably somewhat wider in the upper body. The two-horse wagon which was first ahead and later north of the defendant's truck was 12′ long and about 6′ wide.

There is a conflict of testimony as to the movements of the plaintiff in approaching the place of the accident. The

plaintiff claims that he was proceeding along Point street on his way to the bridge on his own right side of that street and that both before and after the defendant's truck was turning out for the purpose of passing the team ahead of it his approach could have been easily observed by Lodge who was operating the truck. The defendant claims that the plaintiff was not upon his right side of the street, as he claims, but that, so far as Lodge could observe, the street presented a clear passage for his truck upon the left of the team in front of him; that the plaintiff must have been traveling on his left hand side of Point street and his approach, therefore, obscured by the team ahead; and that the plaintiff evidently intending to bear to his left, in passing the team and truck, suddenly found that a passage upon that side was impracticable and so quickly turned to the other side, passing close to the heads of the horses of the team ahead of the truck, and unexpectedly appearing in front of the truck too late for Lodge, the driver, to avoid a collision. The truck did not run over the plaintiff, but the left front mud guard came in contact with his left leg and he sustained a fracture of the left thigh.

We shall not undertake to deal with the questions of fact which were presented to and were particularly within the province of the jury, but the foregoing brief statement will serve to assist the understanding in the discussion of the questions of law.

(1) The defendant claims that the court erred in excluding the record of the Rhode Island Hospital. It appears from the evidence that it is a rule of the Rhode Island Hospital that a record shall be kept showing, among other things, the condition of the patient when received, his treatment while there, his condition from time to time denoting his progress towards recovery or otherwise, as the case may be, and of such other matters as may have a bearing upon or furnish needed information. Such a record relating to the plaintiff was kept by Dr. Peet, who was an interne or assistant surgeon at the hospital. This record embraces some matters which

came under the personal knowledge of Dr. Peet, while other matters of record were communicated to him through doctors and nurses connected with the case. Dr. Peet, who made the record, was at the time of the trial without the jurisdiction of the court and was not available as a witness. The record of Dr. Peet covered the case from June 14th to August 15th, 1912. It appears to have been his business, as the recording official, to place upon record such facts relating to the patient as were communicated to him by his associates and subordinates, as well as those which came under his personal observation. It also appeared that the record in question was written up by Dr. Peet every third day. These facts, explanatory of the record, having all appeared in testimony, and it having also appeared that Dr. Peet was without the State and that the record was in his handwriting, it was offered in evidence by the defendant. The court excluded the record and noted the defendant's exception, stating that it had been excluded with the understanding that it was objected to, whereupon counsel for the plaintiff observed, "I don't understand that it is legal evidence, that it is hearsay, and we have no opportunity to cross-examine the people who made up that record." So far as appears, both sides proceeded upon the assumption and understanding that the plaintiff had regularly objected to the introduction of the record and we, therefore, may consider it in the same way.

The purpose for which this record was offered in evidence was to show the unruly behavior of the plaintiff and his disobedience of the positive orders of the surgeons and nurses as to keeping quiet and refraining from movements which would be likely to seriously interfere with the proper adjustment and knitting together of the fractured bone. It also appears in evidence that some, if not all, of those who reported the plaintiff's condition and actions from time to time were called as witnesses at the trial and that, therefore, as the plaintiff claims, the exclusion of the record did not in effect deprive the defendant of any useful or important

testimony.   We do not think that the plaintiff's claim in this regard is well founded.   The exclusion of the record deprived the defendant of its force as corroborative of the testimony of the other witnesses, the record having been made long prior to the suit and without any reference to the plaintiff's claim.

The general rule that hearsay is not competent testimony is well understood.   To this general rule, however, there are various exceptions.   It is not necessary that there should be any express statute or regulation creating the authority or duty to make such a record.   If the duty of making it devolved upon Dr. Peet, under the rules and regulations of the Rhode Island Hospital, that would be sufficient in that regard and the source from which that duty originated would not be material.   Such duties may arise from the casual direction of a superior or from functions necessarily inherent to the position which the recorder occupies.   3 Wigmore on Evidence, Section 1633; *Kyberg* v. *Perkins,* 6 Cal. 676; *Evanston* v. *Gunn,* 99 U. S. 660.

We do not understand that the plaintiff controverts the general rule of law as contained and stated by the court in its opinion in *State* v. *Mace,* 6 R. I. 85, which is as follows:

"The general principle, as established by the leading English and American cases, is, that entries made in the regular and usual course of business are admissible in evidence after the death of the person who made them, on proof of his handwriting.   In some of the states of this country absence from the State, as far as it affects the admissibility of secondary evidence, has the same effect as the death of the witness.   In Massachusetts insanity has been held equivalent to death.   In New York and Alabama the strict rule is adhered to, that the person who made the entry must be dead to render the entry admissible.   The principle as established by the American decisions, on which an entry is admitted as evidence, seems to be, that the acts of men performed in the usual course of business and committed to writing, being under obligation to do the act, and where

there is no inducement to misstate facts, may be relied on as evidence of things done as they occur. On this principle, entries made in the regular and usual course of business are admitted as proof, although the person who made them may recollect nothing of the facts, upon his testifying to the authenticity of the entry. It would seem therefore, if this evidence may be admitted, when the person who made the entry is present to verify the book, the entry being all that constitutes the evidence, if he be dead or absent, secondary proof that it was kept by him is admissible, on the same ground that a subscribing witness to an instrument, being absent, his handwriting may be proved, or a copy of an instrument, when the original is lost, may be offered in proof. All that is necessary to render the entry admissible as evidence, if the witness is living, is, that he shall testify that the entry was made in the regular course of business in his handwriting; and if he be absent or dead, other witnesses may be competent to testify to that."

The objections of the plaintiff to the admission of the hospital record, as set forth in his brief, are (1) that there is nothing in the case to show that such record is required by law or ordinance; (2) that there is nothing to show that it was the duty of any particular person to keep such record; (3) that it was not a public record, but something that was kept simply for the convenience and assistance of attending doctors and nurses; (4) that the recording was not contemporaneous with the happening of the events recorded; (5) that some of the events recorded were not within the personal knowledge of the person recording them; and (6) that facts reported by others to Dr. Peet and by him recorded were capable of proof by those who reported them and who were, or might have been, called as witnesses on behalf of the defendant.

(2)    The admissibility of a record does not depend upon its requirement by law. In fact, a great variety of records unquestionably admissible in evidence as, for instance, the books of mercantile houses, the records of societies and asso-

ciations, including church records of baptism and marriage,. are not kept through any requirement of law or ordinance. It is sufficient if such record be kept by some person in the regular course of his occupation or business, that is, in the course of transactions performed in one's habitual relations with others and as a natural part of one's mode of obtaining a livelihood, including any regular record that would be helpful, though not essential or usual in the same occupation as followed by others. It is only necessary that the keeping of such record should be a natural concomitant of the transaction to which it relates. 2 Wigmore on Evidence, Section 1523; *Fisher* v. *Mayor,* 67 N. Y. 77; *Kennedy* v. *Doyle,* 10 Allen (Mass.) 161.

The claim of the plaintiff that there is nothing to show that it was the duty of anyone to keep such a record is erroneous. The uncontradicted testimony of Dr. R. C. McAlilay is that it was the duty of Dr. Peet to make such record from June 14th to August 15th, that being a part of the period during which the defendant claims that the unruly and disobedient conduct of the plaintiff was responsible for his incomplete recovery from the fractured bone and further that such records were in the handwriting of Dr. Peet.

In making a record of this character which shall be admissible in evidence it is necessary that the entries therein be made contemporaneously with the facts to which such entries relate. *Chaffee & Co.* v. *U. S.,* 18 Wall. 516. The plaintiff claims that the entries made by Dr. Peet were not contemporaneous and that his failure in that regard would be sufficient to exclude the record. The testimony is that the record was made up every three days and that that method was the one employed at the hospital. The term "contemporaneous" is not construed to mean that a record must be made at the moment of the occurrence, but within such time thereafter as would reasonably make it a part of the transactions. Jones on Evidence, 2d Ed., Section 319;. 9 Serg. & R. (Pa.) 285; *Jones* v. *Long,* 3 Watts 326; *Barker* v. *Haskell,* 9 Cush. 221.

We think that taking into consideration the regular method in which these records were made and the apparent impracticability, in a hospital, of recording each event as it occurred, that the facts relating to the plaintiff were recorded within such reasonable time as would make them a part of the transaction and therefore contemporaneous within the meaning of that term. They were entries made in the regular course of business at the hospital and at the times and in the manner there in vogue. They were made by a person, now without the jurisdiction, who had at the time no interest to misrepresent facts. In *Jones* v. *Long, supra,* the court said "The entry need not be made exactly at the time of the occurrence; it suffices if it be within a reasonable time, so that it may appear to have taken place while the memory of the fact was recent, or the source from which a knowledge of it was derived, unimpaired. The law fixes no precise instant when the entry should be made."

The plaintiff further claims the record to be inadmissible because some of the facts therein recorded by Dr. Peet were not within his personal knowledge and that it being impossible to separate the facts therein due to such personal knowledge from those received by reports from others, the record as a whole must be excluded. We cannot agree with this contention of the plaintiff. The law upon this subject is ably discussed in 2 Wigmore on Evidence, Section 1530, reaching the conclusion that "where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry." And further on (Sec. 1555) the author says: "Where, then, the party has made the record but has not personal knowledge of the delivery of the goods or the rendering of the services charged, he may call the person having knowledge and use the latter's supplemental testimony. If the salesman or teamster is deceased, or otherwise unavailable, · . . . this need not prevent the use of

the entry book." In *Anchor Milling Co.* v. *Walsh,* 108 Mo. 284, plaintiff's manager kept a shipping book in which most of the entries or deliveries were made on the knowledge of a shipping clerk; the clerk had left the plaintiff's employment and was not called. The book was admitted in evidence. In *Morris* v. *Briggs,* 3 Cush. 342, workmen made memoranda from which the plaintiff made entries in his books. It was held that the testimony of the workmen was not necessary. In *Firemen's Ins. Co.* v. *Seaboard Air Line Ry.* (N. C.) 50 S. E. 452, the court held that where in an action against a railroad for burning cotton, it became material to show at what time defendant's wrecking train reached a certain station on the day in question, the dispatcher's train sheet for that day kept in the usual course of business, in which the dispatcher testified that he marked the time of the arrival and departure of the train as telegraphed to him by the operator at the station, was not objectionable as hearsay. See, also, *Louisville & N. R. Co.* v. *Daniel* (Ky.), 91 S. W. 691, to the same effect.

The final objection of the defendant to the admission of the hospital record is that the facts reported to Dr. Peet and by him recorded were capable of proof by those making such reports and that they were or might have been called to testify at the trial on behalf of the defendant. We do not think that this is a well founded objection. As before stated, it deprives the defendant of the corroborative effect of the record upon the testimony of the witnesses in the event that they were called and testified. The written record should not be excluded upon the ground that the witnesses who made reports to Dr. Peet had also testified at the trial of the case. They are two distinct sources of testimony, each having a value independent of the other. 2 Wigmore on Evidence, Section 1544; *Peck* v. *Abbe,* 11 Conn. 210.

Our conclusion is, after a full and careful consideration of the plaintiff's several points of objection, that the hospital record should have been admitted.

The defendant contends that the trial judge erred in charging the jury in reference to the plaintiff's misconduct while in the hospital. There was testimony on the part of the doctors, surgeons, and nurses that the plaintiff, during the time he remained at the hospital, was unusually restless; that he was sometimes ugly and disobedient and interfered with the apparatus placed upon his leg and body for the purpose of restraining his movements during the period when the ends of the fractured bone would be expected to knit together; and that these several acts on the part of the plaintiff were contrary to the express instructions and orders of the attending surgeons and nurses. The surgeons testified that the plaintiff's recovery was not as satisfactory as would reasonably have been anticipated and that the shortening of the leg was probably due to the plaintiff's disobedient and unruly conduct in unfastening straps and in the movements of his body in various ways.

The defendant requested the court to charge the jury upon this point as follows: "If defendant is liable in this case it is only for the natural consequences resulting from the (6) collision. If the plaintiff unreasonably disobeyed the orders of the physicians or nurses in the hospital with regard to keeping quiet, and this failure produced more serious injury than would otherwise have resulted from the accident, the defendant is not responsible to the plaintiff for this aggravation of his injuries." This request was refused, the court charging the jury as follows:

"Now the first thing in that connection, and to my mind one of the most important things for you to decide is, is it established as an affirmative fact that the plaintiff's acts have caused an aggravation of the injury? I instruct you that unless you find on the evidence as an affirmative fact that the plaintiff by his acts has caused such aggravation of the injury, then you are to dismiss this claim from your consideration. It is not enough to decide that the plaintiff may have aggravated his condition; that would be pretty nearly the same as saying that the plaintiff's acts may not

have aggravated his condition. It has got to be more than that; you have got to find as an affirmative fact before you make this allowance that he did aggravate his condition by his own act. The subject is one that I have not found easy to find definite authority on to satisfy my own mind in the time allowed during this trial, but I am going to give my construction of the law on it. I will put it in three paragraphs, so that if you wish to except to the reading of any, just note your exception.

"1st. The plaintiff's acts to have the effect of striking from your consideration any consequences of the injury must have been voluntarily and knowingly performed and performed with the knowledge or means of knowledge that such acts would necessarily or probably do him material harm.

"2nd. If the plaintiff did voluntarily and knowingly and with the knowledge that such acts would necessarily or probably do him material harm commit acts which materially aggravated the effects of his injury, he cannot recover for the aggravation to his injuries so caused by his own act; but this does not affect defendant's liability for damages caused by its wrongful act and for the necessary and proximate consequences of that act of the defendant.

"3rd. If the plaintiff's injury was aggravated by restlessness or acts done by him which were merely the necessary or proximate consequences of the original injury you will not because of such aggravation, lessen the damages required to compensate for the injury done him, but will consider the results of such aggravation as a part of the results of the original injury. If it is involuntary, if it is due to restlessness or any other act beyond the control of the plaintiff, or done without consciousness that it must or probably would hurt him, then it is to be disregarded."

The court first says: "Now the first thing in that connection, and to my mind one of the most important things for you to decide is, is it established as an affirmative fact that the plaintiff's acts have caused an aggravation of

the injury? I instruct you that unless you find on the evidence as an affirmative fact that the plaintiff by his acts has caused such aggravation of the injury, then you are to dismiss this claim from your consideration." And later, in the same portion of the charge, the court said: "You have got to find as an affirmative fact before you make this allowance that he did aggravate his condition by his own act."

We think that the use of this language was unfortunate for the reason that the jury might naturally, and would be likely, to understand therefrom that without some positive proof that the rebellious acts of the plaintiff caused the failure to obtain the best result, they were to dismiss that subject from their consideration. The word affirmative, as used in that portion of the charge before referred to, describes something positive, something declaratory of what actually exists, something that is a fact. The testimony of the physicians and surgeons is simply an expression of their opinion. This opinion is based first, upon the absence of other conditions which would militate against a good recovery and second, upon the probable effect of the movements and behavior of the plaintiff.

From the very nature of things it could not be a matter of positive proof, but only a matter of opinion. It was something, however, which was proper for the jury to consider. It was proper for them to consider it in determining whether or not the failure to obtain the best result was to some extent due to the unwarranted behavior of the plaintiff himself.

We think that the instructions in this respect amounted to error.

The defendant further claims that the trial court erred in charging in substance that if the defendant was, at the time of the accident, traveling on the left of the road, he assumed the risk of so doing and was required to use greater care than if he had been traveling on the right side. The portion of the judge's charge to which the defendant's exception refers is as follows:

(7)    "The case that I want to cite from is *Angell* v. *Lewis*,—
and there the plaintiff's wife was driving a buggy between
Fruit Hill and Centerdale.    The findings of the court and
jury showed that she kept to her right, did not get beyond
the middle; that two wagons came to meet her, came towards
her; the first one continued to keep to its right and went by
safely.    The defendant was in the second and as he came near
the plaintiff's buggy he swung to the left to pass the wagon
in front of him, and in so doing smashed into the plaintiff's
buggy, and it was found and declared that Mrs. Angell,
who was driving, could not reasonably do anything to prevent
the accident.    On that state of affairs the court used expres-
sions that would be applicable to this case if this case
happened on the supposition that I have named.    And the
case I think is pertinent in other respects.    The evidence
shows that the plaintiff's wife complied with this require-
ment on meeting the two teams and that she was in the act
of passing them safely when the defendant suddenly pulled
his team to the left and collided with hers.    In thus taking
the wrong side of the road the defendant took the risk of the
consequences which might arise from his inability to get out
of the way of another team approaching on the right side
of the road and is responsible for injuries sustained by the
latter while exercising ordinary care.    In other words, one
who violates the law of the road by driving on the wrong
side assumes the risk of such an experiment and is required
to use greater care than if he had kept on the right side of
the road, and if a collision took place in such circumstances
the presumption is against the party who is on the wrong
side, and this—

"In another case cited by the Rhode Island Court these
words are used: 'It is legal negligence in anyone to occupy
the half of the way appropriated by law to others having
occasion to use it in travelling with teams and carriages
and he is chargeable for any injury flowing exclusively from
that cause.'

" 'The plaintiff's wife had the right to presume that the driver of any team coming in the opposite direction would duly observe the law of the road as she herself was doing and hence she was not called upon to exercise that degree of care which devolved upon the defendant when taking the wrong side of the road.'

"Now you will remember the circumstances of the case in which that language was used. That was used with reference to the facts then before the court, that the plaintiff's wife, Mrs. Angell, was on and had kept on her side of the road and the collision was caused because the defendant left his right, drove over on his left and smashed into the plaintiff's buggy; and it is to be remembered in considering the opinion there, the words of the opinion, that the opinion was used with reference to that state of facts."

It appears from this portion of the charge that the court read to the jury certain portions of the opinion in the case of *Angell* v. *Lewis,* 20 R. I. 391, as applicable to the case on trial. That case was decided prior to the passage of Section 1, Chapter 87 of Gen. Laws of 1909, now sometimes referred to as the "law of the road." In the case of *Angell* v. *Lewis, supra,* the court in its opinion made use of the following language: "In thus taking the wrong side of the road the defendant took the risk of the consequences which might arise from his inability to get out of the way of another team approaching on the right side of the road and is responsible for injuries sustained by the latter while exercising ordinary care. In other words, one who violates the 'Law of the road' by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road; and if a collision takes place in such circumstances, the presumption is against the party who is on the wrong side. And this is especially true where the collision takes place in the dark."

We think that this language of the court in *Angell* v. *Lewis* must be considered in connection with the facts of that case in order to get at its intended meaning. That case

differs in some important particulars from the case at bar. The accident occurred in the darkness of night. The defendant admitted that when he pulled out to pass the teams ahead of him he was not thinking that some one might be coming towards him on the other side of the road. In other words, the defendant in that case confessedly, without exercising any care whatever, drove upon the left hand side of the road under circumstances which made it impossible for him to ascertain or observe the approach of another team. We think that the opinion in that case must be limited by the facts therein and that, under the circumstances, the court may have been justified in characterizing the action of the defendant as an experiment, the risk of which he assumed.

The law regarding the movement of vehicles upon the highway is contained in Section 1, Chapter 87 of Gen. Laws of Rhode Island, 1909, and is as follows:

"Section 1. Every person travelling with any carriage or other vehicle, who shall meet any other person so travelling on any highway or bridge, shall seasonably drive his carriage or vehicle to the right of the center of the travelled part of the road, so as to enable such person to pass with his carriage or vehicle without interference or interruption. Every person travelling with any carriage or other vehicle who shall overtake any other person so travelling on any highway or bridge shall pass on the left side thereof, and the person so overtaken shall as soon as practicable drive to the right so as to allow free passage on the left."

Under this section the rights and duties of parties moving in opposite directions upon the highway, as well as the duty of parties moving in the same direction, are defined. It is, under this statute, the privilege of a person who may be travelling in the rear of another vehicle to pass such vehicle upon the left side, it being the duty of the one in advance to bear to the right for the purpose of facilitating such passage. In passing a vehicle ahead, it would be necessary in many highways to enter upon and occupy, for the time being,

some portion of the travelled way beyond the central line thereof and it cannot be reasonably said that in the passage of the statute above quoted, it was the intention of the legislature to confine the passing vehicle to such portion of the highway as might lie upon the right side of the center line thereof. Where two vehicles are moving in the same direction, the one in the rear had the right to pass the one in front and such passing is not of and in itself negligence, although some portion of the road to the left of the central line may be encroached upon. The person passing would not be required to exercise a greater degree of care, he would be required to exercise such care as the conditions and circumstances demanded and if he did exercise such care as the conditions and circumstances demanded he would be in the exercise of due care.

In the case of *Marsh* v. *Boyden*, 33 R. I. 519, the court said: "They would not be held to a greater degree of care as being upon the wrong side of the road, in fact the degree of care required was exactly the same on the one side of the car as upon the other, and that was due care, care proportionate to the conditions existing at that time and place. . . . If a duty was violated, it is the duty of using due care under all the circumstances of the case."

We think that in the case at bar the trial court, to some extent, misconceived the case of *Angell* v. *Lewis*, and gave to the opinion therein a greater force or a different construction than it was entitled to.

We think that the jury, from that portion of the charge relating to the law of the road, would naturally understand that the presence of the defendant's truck upon the left side of the road was negligence in itself and that the defendant was, therefore, responsible for the results of the collision, whereas, on the contrary, the jury should have been instructed that the defendant had a right to pass to the left of the team in front of him and would not be responsible for the collision if, in doing so, he acted with such care as the

time, place and circumstances demanded of him or, in other words, if in his attempt to pass by he exercised due care.

The defendant's exceptions numbered 1, 2, 4 and 5 relate to rulings of the trial court admitting testimony. These exceptions do not seem to us to be important for the reason that we cannot see that the admission of the testimony was prejudicial to the defendant's case. The defendant's sixth exception is apparently abandoned. The defendant's exceptions numbered 7, 8 and 9 are to the refusal of the court to charge as therein requested, such refusal being upon the ground that the matters referred to in the requests had already been covered, and we cannot see from an examination of the whole charge that the court was in error.

The defendant's tenth exception relates to the refusal of the court to charge the jury in accordance with defendant's fourth request, which reads as follows: "You are instructed that in arriving at a verdict in this case you are to act just as if the case had been brought against the defendant's employee, Alexander J. Lodge, instead of the defendant company, and you should not find a verdict against the defendant, the Revere Rubber Company, unless you would have found a verdict against Alexander J. Lodge if the case had been brought against him." While this language might have been used with propriety in the course of argument, it does not seem to us that it was of any particular importance as an instruction to the jury.

The defendant's twelfth exception is to a portion of the charge to the effect that the last half of Section 1, Chapter 87, Gen. Laws of 1909, in no respect changes the rights or duties of the automobile about to pass a team in regard to vehicles going the other way. It is not altogether clear as to what the trial court had in mind in giving this instruction. The section of the statute referred to deals with two situations: (1) When parties proceeding in different directions approach each other; and (2) when one vehicle desires to pass another going in the same direction. As we have before substantially said, a person attempting to pass a

vehicle ahead of him and going in the same direction must exercise proper care in so doing.   If a vehicle is approaching from the opposite direction at the moment when he desires to pass the vehicle in front, and the highway is not wide enough to safely accommodate all three teams abreast, then (8) it would be the duty of the person in charge of the rear vehicle, in the exercise of proper care under the circumstances, to wait until the vehicle coming in the opposite direction had passed by before he attempted to turn out.   It is not necessary to involve the question as to the duty of the vehicle in the rear, in passing, towards another vehicle that may be approaching in an opposite direction.   The approach of the vehicle in the opposite direction is simply one of the circumstances which must be considered by the rear man when he attempts to pass.   It is simply one of the things which demands the exercise of care upon his part under all circumstances, and in some circumstances he would be required to refrain from attempting to pass until the approaching vehicle had gone by.

The defendant's seventeenth exception is based upon the charge of the court as requested by the plaintiff in his fifth request.   This request is as follows:  "If you find that at the time of the accident the plaintiff was riding upon Point Street on his right side of the highway, and was in the exercise of ordinary care, and the driver of the auto truck of the defendant company suddenly drove his truck to the left side of the highway in an effort to pass a team in front of him, and the plaintiff was unable to get out of the way of the auto truck owing to the suddenness of defendant's approach in front of him, by the exercise of ordinary care, then the defendant company is liable for the injuries received by the plaintiff."   We do not see any error in charging the jury in accordance with this request nor do we see any error in the refusal of the trial court to grant a new trial, the latter being covered by the defendant's exception numbered 21.

The defendant's exceptions 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 17, and 21 are overruled.   The defendant's exceptions 3, 11, 13, 14, 15, 16, 18, 19 and 20 are sustained and the case is remitted to the Superior Court for a new trial.

JOHNSON, C. J., dissenting.   I am unable to agree entirely with the opinion of the majority of the court.   By said opinion all the defendant's exceptions are overruled except its exceptions numbered 3, 11, 13, 14, 15, 16, 18, 19 and 20, which are thereby sustained.   I dissent only as to the exceptions sustained.

The third exception is to the exclusion of the record of the Rhode Island Hospital.   Upon the subject of said record, prior to the offer thereof in evidence, Dr. McAlilay testified that in June, 1912, Dr. Johnson was house surgeon.   Dr. Peet was the second, and the witness the third man in the service.   He said: "Well, the last six weeks of every service, that is of every houseman's term, which is three months, his junior writes the continued notes; the first six weeks of his own service the house surgeon writes them himself."   He testified that this was Dr. Peet's duty during the early part of the period when the plaintiff was at the hospital, that Dr. Peet was then the junior house surgeon. That the records were in Dr. Peet's handwriting from June 15th to August 15th; that Dr. Peet was at Philadelphia, at the time of the trial.   The question was then asked: "How are these records made up; what is the custom and rule of the hospital with reference to the making up of the records, doctor?"   A.   "The man who has charge of writing the name on the case is supposed to make notes on that case every three days, that is, the important things that have happened in the case, every three days and oftener if necessary."   The question is then asked: "And then those notes are incorporated into the hospital record?"   A.   "Yes sir."   Q.   "Are those notes which he makes every three days in the usual course of his duty based upon his own observation or upon the observation of himself and others?"

The witness: "I served three months as senior man on the nose and throat service and I had to make records every three days. I served nearly three months as house physician and I had to make notes every three days on every patient." The COURT: "Is your answer complete?" Witness: "No. I said that you made the notes from your own observation and the observation of your visiting man on the rounds and I said that was my experience and my experience is the custom of the hospital, that is, it is the custom there for every man to do the same thing." The record was then offered. It was ruled out and defendant's exception noted.

This record was offered for the purpose of showing unruly behavior on the part of the plaintiff and his disobedience of the orders of the surgeons and nurses as to keeping quiet and refraining from movements which would be likely to interfere with the proper adjustment and knitting together of the fractured bone. It also appears in evidence that some, if not all, of those who reported the plaintiff's condition and actions from time to time were called as witnesses at the trial and that therefore, as the plaintiff claims, the exclusion of the record did not in effect deprive the defendant of any useful or important testimony.

The objection of the plaintiff to the admission of the record made by Dr. Peet, as set forth in his brief, are (1) that there is nothing in the case to show that such record is required by law or ordinance; (2) that there is nothing to show that it was the duty of any particular person to keep such record; (3) that it was not a public record, but something that was kept simply for the convenience and assistance of attending doctors and nurses; (4) that the recording was not contemporaneous with the happening of the events recorded; (5) that some of the events recorded were not within the personal knowledge of the person recording them; and (6) that facts reported by others to Dr. Peet and by him recorded were capable of proof by those who reported them and who were, or might have been, called as witnesses on behalf of the defendant.

It appears from the evidence that some of the facts recorded by Dr. Peet were not within his personal knowledge and the plaintiff claims that, it being impossible to separate the facts therein due to such personal knowledge from those received by reports from others, the record as a whole must be excluded.

Upon the question of knowledge on the part of the witness, it is said in Section 657 of Wigmore on Evidence: "Knowledge must be founded on personal observation by the senses, not on hearsay. The first corollary from the general principle of knowledge is that what the witness represents as his knowledge must be an impression derived from the *exercise of his own senses*, not from the reports of others,—in other words, must be founded on personal observation. This general rule, to which contrary instances can be only casual exceptions, has long been recognized as fundamental: Upon this principle, the testimony of one claiming to have knowledge has constantly been rejected, when it appeared that he had lacked personal observation."

Among the exceptional cases under this principle when knowledge founded on hearsay may suffice is that of testimony of deceased or absent persons under the hearsay exceptions. Upon this, Mr. Wigmore says, in Section 670: "Under the exceptions to the hearsay rule the testimony of the witness deceased or absent must equally be based on personal observation," and in Section 1424: "The hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements by way of exception to the rule therefore presupposes that the assertor possessed the qualifications of a witness in regard to knowledge and the like. These qualifications are fundamental as rules of relevancy and can never be dispensed with. Thus these extra judicial statements may be inadmissible because of their failure to fulfill the ordinary rules about qualifications even though they meet the requirements of a hearsay exception."

"Personal knowledge of entrant; entries by bookkeeper, etc., on report of salesman, teamster, etc. (1) There can be no doubt that the general principle of testimonial evidence (*ante* Section 657) should apply here as elsewhere, namely, that the person whose statement is received as testimony should speak from personal observation or knowledge. This principle has often been invoked in excluding entries made by persons who had no personal knowledge of the supposed facts recorded." . . .

"The use of a party's entries, like that of all the hearsay exceptions, must be subject to the ordinary principles of testimonial qualifications (*ante* Section 1424). When the party is the entrant then he must have the elementary qualification, the personal knowledge of the transaction recorded (*ante* Section 657)." *Id.* Section 1530.

The admission of such records is discussed in *Delaney* v. *Framingham Gas, &c., Power Co.,* 202 Mass. 359. At page 366, the court said: "So far as respects the admissibility of the records of the Carney Hospital Under St. 1905, c. 330, the same rule applies because these records also were made before it was passed. The defendant insists, however, that the records of this hospital are admissible under the common law. While it is true that the records were not made in accordance with a requirement of law and therefore were not legal records within the meaning of the rule that legal records or copies thereof are generally admissible, still it appears that they were made in the usual course of business by a person in the discharge of a duty, who appears not only as the maker of them, but as their custodian. If she had died and her handwriting had been proved, in the absence of any other testimony as to the manner in which they were made up, they would have been admissible. As in the case of *Townsend* v. *Pepperell,* 99 Mass. 40, it would have been assumed that the records were of facts known to her. The rule applicable to such records ordinarily is that the entries must be made by a person having personal knowledge of the truthfulness of the statements. This test has been

applied by this court in the case of shop books offered to prove delivery of goods, and it has been held that where the clerk who made the entries had no knowledge of the facts the entries are not admissible, although the clerk testified that he correctly put down the information he received from the person by whom the delivery was said to be made."

. . . "It is true that this rule has not been applied with the same strictness to other memoranda. But in substance the general principle is the same. In the leading case of *Welsh* v. *Barrett*, 15 Mass. 380, 386, in which a bank messenger's memorandum of a demand and notice made by him in the course of his duty was admitted upon proof of his handwriting, he being dead, the principle was stated in these words: 'What a man has said when not under oath may not, in general, be given in evidence when he is dead; because his words may be misconstrued and misrecollected; as well as because it cannot be known that he was under any strong motive to declare the truth. Yet there are well known exceptions to this rule, as in questions concerning pedigree. But what a man has actually done and committed to writing, when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury.' And the rule has been adhered to quite generally except where in the course of the business the clerk making the entry receives his information either orally or in writing from various persons whom he cannot expect to remember and whom it will be impracticable to call. To apply the rule in such case and to require the evidence of every person in the long line of persons who have had anything to do with the transaction recorded, would be practically impossible, and so as a practical necessity the record is admitted upon the oath of the recorder, if alive, or upon proof of handwriting if he be dead. It is probable that this exception has been carried farther elsewhere than in this State. For a general discussion of the subject see Wigmore on Evidence, Section 1530, and cases cited in the

notes.   In our own State this exception seems to have been recognized in *Briggs* v. *Rafferty,* 14 Gray, 525; *Adams* v. *Coulliard,* 102 Mass. 167.

"In the present case the records were produced by the witness Gabagan.   It appeared that the records were made by her, and that she was the proper custodian of them. But it further appeared that she never had any personal knowledge of the facts stated therein; that she received slips of paper from Dr. Painter, the physician, and copied them into the record; and that was all she knew about them.   The record was offered as evidence to show that the statements therein made were true.   As handed to the witness by the physician they were simply statements of the physician as to what the patient had said to him, or as to the diagnosis made by the physician.   The records were comparatively recent.   It was not shown that the physician was not living and within the jurisdiction of the court.   No necessity was shown, therefore, for the introduction of this hearsay testimony.   For aught that appeared there was better evidence.   Under these circumstances the reason upon which the general rule was based, namely, that the record should be a record of facts of which the writer had personal knowledge, should be applied.   The case is not within the above-mentioned exception to the general rule."

The case at bar differs from the case last cited in that here the entrant was shown to be outside the jurisdiction of the court.   It appears however that the testimony of those from whom the entrant received the information which he wrote down was available and that many, if not all, of said persons were called and testified.   The defendant was therefore able to get the testimony of the original witnesses.

The majority opinion says: "We do not think that the plaintiff's claim in this regard is well founded.   The exclusion of the record deprived the defendant of its force as corroborative of the testimony of the other witnesses, the record having been made long prior to the suit and without any reference to the plaintiff's claim."   The defendant had

the testimony of the declarants, which was the best evidence, and it is not entitled to corroborate the testimony of said witnesses by showing that they had, when not under oath, made the same statements as when under oath.  After a witness had testified, I do not think that another witness would be permitted to corroborate his testimony by saying that the witness had previously made the same statement to him.  Further, the judge, on the evidence submitted preparatory to the offer of the record kept by the junior house surgeon, may properly have found that the record was imperfect or not properly kept.  Upon such a finding it would be properly excluded.  In my opinion there was no error in the exclusion of the record offered.

The defendant alleges error in the charge to the jury with reference to the conduct of the plaintiff in the hospital. The defendant requested the court to charge the jury upon this point as follows:  "If defendant is liable in this case it is only for the natural consequences resulting from the collision.  If the plaintiff unreasonably disobeyed the orders of the physicians or nurses in the hospital with regard to keeping quiet, and this failure produced more serious injury than would otherwise have resulted from the accident, the defendant is not responsible to the plaintiff for this aggravation of his injuries."  This request was refused, the court charging the jury as follows:

"Now the first thing in that connection, and to my mind one of the most important things for you to decide is, is it established as an affirmative fact that the plaintiff's acts have caused an aggravation of the injury?  I instruct you that unless you find on the evidence as an affirmative fact that the plaintiff by his acts has caused such aggravation of the injury, then you are to dismiss this claim from your consideration.  It is not enough to decide that the plaintiff may have aggravated his condition; that would be pretty nearly the same as saying that the plaintiff's acts may not have aggravated his condition.  It has got to be more than that; you have got to find as an affirmative fact before you

make this allowance that he did aggravate his condition by his own act.    The subject is one that I have not found easy to find definite authority on to satisfy my own mind in the time allowed during this trial, but I am going to give my construction of the law on it.    I will put it in three paragraphs, so that if you wish to except to the reading of any, just note your exception.

"1st.    The plaintiff's acts to have the effect of striking from your consideration any consequences of the injury must have been voluntarily and knowingly performed and performed with the knowledge or means of knowledge that such acts would necessarily or probably do him material harm.

"2nd.    If the plaintiff did voluntarily and knowingly and with the knowledge that such acts would necessarily or probably do him material harm commit acts which materially aggravated the effects of his injury, he cannot recover for the aggravation to his injuries so caused by his own act; but this does not affect defendant's liability for damages caused by its wrongful act and for the necessary and proximate consequences of that act of the defendant.

"3rd.    If the plaintiff's injury was aggravated by restlessness or acts done by him which were merely the necessary or proximate consequences of the original injury you will not because of such aggravation, lessen the damages required to compensate for the injury done him, but will consider the results of such aggravation as a part of the results of the original injury.    If it is involuntary, if it is due to restlessness or any other act beyond the control of the plaintiff, or done without consciousness that it must or probably would hurt him, then it is to be disregarded."

The only criticism of this instruction by the majority opinion is of the words:    "Now the first thing in that connection, and to my mind one of the most important things for you to decide is, is it established as an affirmative fact that the plaintiff's acts have caused an aggravation of the injury? I instruct you that unless you find on the evidence as an

affirmative fact that the plaintiff by his acts has caused such injury, then you are to dismiss this claim from your consideration;" and later: "You have got to find as an affirmative fact before you make this allowance that he did aggravate his condition by his own act." The majority opinion says: "We think that the use of this language was unfortunate for the reason that the jury might naturally, and would be likely, to understand therefrom that without some positive proof that the rebellious acts of the plaintiff caused the failure to obtain the best result, they were to dismiss that subject from their consideration. The word affirmative, as used in that portion of the charge before referred to, describes something positive, something declaratory of what actually exists, something that is a fact."

The word is defined in Webster's New International Dictionary—"2. That affirms; asserting that the fact is so; declaratory of what exists; answering 'yes' to a question,—opposed to negative; as an *affirmative* answer or vote."

The opinion then says: "The testimony of the physicians and surgeons is simply an expression of their opinion. This opinion is based first, upon the absence of other conditions which would militate against a good recovery and second, upon the probable effect of the movements and behavior of the plaintiff.

From the very nature of things it could not be a matter of positive proof, but only a matter of opinion. It was something, however, which was proper for the jury to consider. It was proper for them to consider it in determining whether or not the failure to obtain the best result was to some extent due to the unwarranted behavior of the plaintiff himself."

While it is true that the testimony of the physicians and surgeons is an expression of their opinion, such testimony must be based upon facts sufficient to justify such opinion, in order to affirmatively establish that which such opinion asserts to be true. "The absence of other conditions which would militate against a good recovery" would be a fact which, taken in connection with movements and behavior

of the plaintiff shown by the evidence, would furnish a basis for an opinion by the physicians as to the probable effect of such movements and behavior of the plaintiff. The majority opinion says: "From the nature of things it could not be a matter of positive proof, but only a matter of opinion." While the testimony of the physician would consist in the statement of his opinion, including the grounds thereof, what is to be established as the result of the proof is not an opinion, but a fact. As the majority opinion says: "The word affirmative, as used in that portion of the charge before referred to, describes something positive, something declaratory of what actually exists, something that is a fact." That is an admirable definition of the word as used in the instruction, and its use was entirely proper. The judge did not err in this instruction. The foregoing discussion involves exceptions 11, 18, 19 and 20.

The defendant also excepted to the following portion of the charge of the court: "The case that I want to cite from is *Angell* v. *Lewis*,—and there the plaintiff's wife was driving a buggy between Fruit Hill and Centerdale. The findings of the court and jury showed that she kept to her right, did not get beyond the middle; that two wagons came to meet her, came towards her; the first one continued to keep to its right and went by safely. The defendant was in the second and as he came near the plaintiff's buggy he swung to the left to pass the wagon in front of him, and in so doing smashed into the plaintiff's buggy, and it was found and declared that Mrs. Angell, who was driving, could not reasonably do anything to prevent the accident. On that state of affairs the court used expressions that would be applicable to this case if this case happened on the supposition that I have named. And the case I think is pertinent in other respects. The evidence shows that the plaintiff's wife complied with this requirement on meeting the two teams and that she was in the act of passing them safely when the defendant suddenly pulled his team to the left and collided with hers. In thus taking the wrong side of the

road the defendant took the risk of the consequences which might arise from his inability to get out of the way of another team approaching on the right side of the road and is responsible for injuries sustained by the latter while exercising ordinary care. In other words, one who violates the law of the road by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road, and if a collision took place in such circumstances the presumption is against the party who is on the wrong side, and this—

"In another case cited by the Rhode Island Court these words are used: 'It is legal negligence in anyone to occupy the half of the way appropriated by law to others having occasion to use it in travelling with teams and carriages and he is chargeable for any injury flowing exclusively from that cause.'

" 'The plaintiff's wife had the right to presume that the driver of any team coming in the opposite direction would duly observe the law of the road as she herself was doing and hence she was not called upon to exercise that degree of care which devolved upon the defendant when taking the wrong side of the road.'

"Now you will remember the circumstances of the case in which that language was used. That was used with reference to the facts then before the court, that the plaintiff's wife, Mrs. Angell, was on and had kept on her side of the road and the collision was caused because the defendant left his right, drove over on his left and smashed into the plaintiff's buggy; and it is to be remembered in considering the opinion there, the words of the opinion, that the opinion was used with reference to that state of facts."

The case of *Angell* v. *Lewis*, 20 R. I. 391, has never been overruled, doubted or distinguished in any way to diminish its authority. The doctrine therein laid down that one who violates the law of the road by driving on the wrong side assumes the risk of such experiment and is required to use greater care than if he had kept on the right side of the road,

and if a collision took place in such circumstances the presumption is against the party who is on the wrong side of the road; and that quoted from the case therein cited: "It is legal negligence in anyone to occupy the half of the way appropriated by law to others having occasion to use it in travelling with teams and carriages and he is chargeable for any injury flowing exclusively from that cause" have been consistently followed in this State.

*Angell* v. *Lewis* was cited in *Winter* v. *Harris*, 23 R. I. 47, in which case the court says: "The plaintiff showed no sufficient cause or excuse for being on the wrong side of the road at the time of the accident, and the injuries she complained of were attributable mainly, if not wholly, to her own failure to exercise due care; hence, under the circumstances of this case, we find no error in the charge of the justice, to which exception was taken;" also in *Pick* v. *Thurston*, 25 R. I. 36, where the court said: "As the plaintiff in the case at bar was violating the 'law of the road' she must show some sufficient cause or excuse for being on the wrong side to enable her to attribute negligence to the defendant."

Many cases in other jurisdictions are in accord.

In *Brember* v. *Jones*, N. H. 1893, 26 L. R. A. 408, the court says: "Ordinarily, if one traveller, in meeting another, be found upon the half of the way appointed to him by the statute, travelling with ordinary care and prudence, and he sustain an injury by a collision with the vehicle of another, who is upon that part of the way to which he has not the statutory right, the individual who has thus sustained the injury may have redress by action against him who was thus on the part of the way to which the statute did not give him the right. The traveller who thus travels prudently and carefully upon the half of the way assigned to him, will ordinarily pass at the hazard and risk of him who trenches upon his rights in the manner already stated. . . . It is legal negligence in any one thus to occupy the half of the way appropriated by law to others having occasion to use

it in travelling with teams and carriages, and he is chargeable for any injury flowing exclusively from that cause."

In *Reipe* v. *Elting*, Iowa, 1893, 26 L. R. A. 769, the court said: "The general rule seems to be that, where a collision occurs between the horse or vehicle of a person on the wrong side of the road and that of a person coming towards him, the presumption is that it was caused by the negligence of the person who was on the wrong side of the road, but that his presence on that side may be explained and justified, (2 Shearm. & Redf. Neg. § 650; Elliott, Roads & Streets, 3d Ed., § 1082).

In *Foote* v. *American Product Company*, 195 Pa. St., 1900, p. 190, the court said: "In passing north along the east side of Seventeenth street, the boy was where he had a right to be, and where, if travelling on the street in that direction, the law of the road, as well as the city ordinance, required him to be. When the collision occurred, the driver was turning his wagon around the southeast corner of Spruce and Seventeenth streets, and the plaintiffs claim that it was with the intention of going south on the east side of the street. When no one was approaching with a desire to pass him with a vehicle the driver had the right to use any part of the street not occupied by another; yet when he turned abruptly on Seventeenth street, in the manner shown by the testimony, he was taking the chance of a collision with other travellers going north on that street, whose rights at that place were superior to his."

*Louis Perlstein* v. *American Express Co.*, 177 Mass. 530; The court, KNOWLTON, J., said: "The plaintiff introduced testimony that he himself was driving on the right hand side of Harrison Avenue, close to the sidewalk, and it tended to show that he was in the exercise of due care. The driver of the other team was driving 'very fast' in the opposite direction, and collided with the plaintiff. This was evidence that he was acting in violation of the statute which requires persons meeting each other as these persons were, to drive 'to the right of the middle of the travelled part' of the road, and

unexplained it indicated negligence.   *Reynolds* v. *Hanrahan*, 100 Mass; 313.   *Young* v. *South Boston Ice Co*, 150 Mass. 527. *Randolph* v. *O'Riordon*, 155 Mass. 331."

"One who violates the law of the road by driving on the wrong side of the way assumes the risk of all such experiments and must use greater care than if he keeps upon the right side of the road.   If a collision takes place the presumption is generally against the party on the wrong side."   Elliott, Roads and Streets, Section 1082.

In the charge it does not clearly appear whether the Judge read from *Angell* v. *Lewis*, or not.   In his statement of the facts, he does not follow the language literally, while he does so in substance.   The instructions in matters of law are given as in the report of said case.   I see no reason for criticism in his use of said case in the charge and in my opinion there was no error in such use.   As to the suggestion in the majority opinion that the language of *Angell* v. *Lewis* must be considered in connection with the facts of that case in order to get at its intended meaning, the case is not peculiar in that regard.   No two cases are exactly alike in all their circumstances.   The fact however that the collision in that case occurred between five and six o'clock P. M. on January 3, 1897, while that in this case occurred about six o'clock in the afternoon on June 14, 1912, or the fact that in that case the defendant admitted that when he pulled out to pass the teams ahead of him he was not thinking that some one might be coming towards him on the other side of the road, while in this case the defendant's servant sounded his horn, shifted his speed from first to second, and started to pass on the left of the wagon in front of him, and while thus attempting to pass the team in front a collision took place between the truck and the plaintiff who was riding a bicycle in the opposite direction, would not constitute such differences in the facts of the two cases as render the law of the former case inapplicable to the case at bar.

The law of the road is now given in Gen. Laws, 1909, cap. 87 §§ 1 and 2, as follows: "Section 1.   Every person travelling with any carriage or other vehicle, who shall meet any other

person so travelling on any highway or bridge, shall seasonably drive his carriage or vehicle to the right of the center of the travelled part of the road, so as to enable such person to pass with his carriage or vehicle without interference or interruption. Every person travelling with any carriage or other vehicle who shall overtake any other person so travelling on any highway or bridge shall pass on the left side thereof, and the person so overtaken shall as soon as practicable drive to the right so as to allow free passage on the left.

"Sec. 2. Every person who shall wilfully violate the provisions of the preceding section shall be fined five dollars, and shall be liable for all damages sustained in consequence of any neglect to comply with said provisions."

*Marsh* v. *Boyden*, 33 R. I. 519, cited in the majority opinion is not in point. In that case, at p. 523, the court said: "If the rule of the road had any application at all it must have been with reference to the street car or the people thereon, but the plaintiff at the time of the accident had ceased to be a passenger on the car and there was no interference with the car or collision in which it and the automobile of the defendant were involved. The plaintiff was not injured in consequence of the neglect of any duty which the defendant owed to the car or its occupants. Of course the defendant was bound to take notice of the fact that a street car had stopped to allow passengers to alight and to so conduct his vehicle as not to run down persons who had so alighted, but that is not a duty imposed by the statutes hereinbefore referred to as prescribing the rule of the road." This language preceeds that quoted in the majority opinion.

The foregoing discussion involves exceptions 13, 14, 15, 16, 17.

All of defendant's exceptions should be overruled and the case should be remitted to the Superior Court for the entry of judgment for the plaintiff upon the verdict.

Sweetland, J., concurs in opinion of Johnson, C. J.

*Washington R. Prescott, Edward H. Zeigler*, for plaintiff.
*Gardner, Pirce and Thornley*, for defendant.
*James A. Pirce, Charles R. Haslam*, of counsel.