CHARLES R. GOW COMPANY *vs.* LOUIS MARDEN & another.

Suffolk.    January 24, 1928.— March 1, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Contract,* Construction, Performance and breach, Building contract. *Evidence,* Competency, Entries in record in course of business.

At the hearing of an action for extra labor and materials alleged to have been furnished under the provisions of a building contract, where a timekeeper and clerk of the plaintiff, a corporation, testified, time cards showing the names of the men on the work, the time spent by them and their compensation, kept by the witness in the usual course of the plaintiff's business with entries made from his personal knowledge on the day the work was done and with records on the backs of measurements made by the foreman and given to the timekeeper, who, with the foreman, examined those items and measurements, properly were admitted in evidence.

The contract which was the basis of the action above described was for the installing of concrete caissons for the foundation of a building being constructed by the defendant in a narrow lot.    Pumps and derricks occupying considerable space were required.    Stone taken from the defendant's wall had to be removed and dirt excavated by the defendant had to be taken away.    The stone and dirt handled by the defendant were left in such a position that the plaintiff could not go on with its work until this material had been removed.    The plaintiff's foreman requested the defendant to move some of the stone.    He replied he had "no labor for that purpose" and for the foreman to "go ahead and have it done."    Provisions of the contract required the defendant to "drill and split all stonework encountered at the caisson locations, removing all such stone as can reasonably be reached before" the plaintiff's cylinders were set; and required the plaintiff to "excavate the caissons to the sand and/or gravel shown by" borings, "concrete up to the elevation shown in" a schedule, "and leave our [the plaintiff's] excavated material on the side as dumped."    The trial judge ruled that the contract gave the plaintiff the right to dump the material as it came out of the excavation, and that it was the duty of the defendant to remove this excavated material.    There was a finding that it was impossible to determine whether the plaintiff's work could have been carried on in a more efficient way.    *Held,* that

(1) The ruling by the judge was right;

(2) A finding for the plaintiff on a claim for extra compensation for removing the excavated material was warranted.

A provision of the contract which was the basis of the action above described was that if it became necessary to increase the bell sizes or otherwise "increase the caisson dimensions," the defendant was to pay the

plaintiff for the increased volume at a proportionate rate. The defendant contended that the words "increase the caisson dimensions," as used in the contract, meant the increased dimension of the concrete pile or base, and did not include the amount of labor necessary to create the displacement or the work of excavating and back filling. *Held,* that such construction of the contract was unwarranted, and that the plaintiff was entitled to recover for all work made necessary by the increase in size of caisson dimensions.

CONTRACT for extra work done and materials furnished by the plaintiff to the defendants under a contract in writing. Writ dated May 12, 1925.

In the Superior Court, the action was referred to an auditor under a rule whereby the auditor's findings of fact were final.

The contract between the parties was dated August 5, 1924, was in substitution for a contract dated July 29, 1924, and required the plaintiff (1) "to furnish all tools, materials, and labor and install by our usual methods twenty-seven" Gow caissons according to a schedule of dimensions and type "which were to serve as the foundation for a building to be erected by the defendants at 331 Commonwealth Avenue, Boston"; and (2) "to start our work from the grade of the existing basement floor, excavate the caissons to the sand and/or gravel shown by our borings, . . . concrete up to the elevations shown in the above schedule, and leave our excavated material on the site as dumped." The defendants were (3) "to furnish free of cost to" the plaintiff "all reinforcing steel required for the work; do all necessary excavation to the grade from which our [the plaintiff's] work is to start; drill and split all stonework encountered at the caisson locations, removing all such stone as can reasonably be reached before our cylinders are set; furnish us water for concrete at the site; give all lines and grades and furnish stakes for the caissons." Further provisions of the contract were:

"5. In case it is necessary to increase the bell sizes, or otherwise increase the caisson dimensions as shown in the above schedule, you are to pay us for the increased volume at a rate proportionate to the price named in Item 1.

"6. We will absorb in the above price, the cost of all work done to date under our existing contract, excepting borings,

excavation above the starting grade stated above, and any work which, under the conditions of this agreement, would have been done by you had same been in force originally. For any such costs we will bill you at cost plus ten (10) per cent."

The declaration was in six counts. The claims set out in the first and third counts, amounting to $142.19 and interest, were conceded by the defendants. The second count set out a claim for $435.72 and interest for extra work under paragraphs 3 and 6 of the contract in splitting stonework. On this count the auditor found for the plaintiff in the sum of $25.60 and interest. In the fourth count, the plaintiff sought, under paragraphs 2, 3, and 6 of the contract, to recover "$78.99 for excavating above the starting grade specified . . . and $332.33 for extra work and labor in rehandling certain loose material on the lot, which it claims it was the duty of the defendants to handle under the contract." The auditor allowed $78.56 on the first claim and $330.51 on the second. In the fifth count, the plaintiff's claim was for $1,998.27 (afterwards reduced by it to $1,603.92) under paragraph 5 of the contract for "tools, materials and labor necessary so to increase the bell sizes or caisson dimensions and install said caissons with" necessary increased bell sizes and dimensions. Of this claim, the auditor allowed $1,369.52 and interest. The sixth count was upon an account annexed including the items of the previous counts.

Other material facts found by the auditor are stated in the opinion. A motion for recommittal, denied by the judge, is described in the opinion.

The action was heard by *Bishop*, J., without a jury, upon the auditor's report, and there was a finding for the plaintiff in the sum of $2,268.35. The defendants alleged exceptions.

*H. Bergson*, (*H. Kalus* with him,) for the defendants.

*C. O. Pengra*, for the plaintiff.

CARROLL, J. This is an action to recover for extra work and material. The parties made a written contract by which the plaintiff was to install a number of caissons to carry the foundations of a building. The work was to start from the grade of the basement floor, and if it became necessary to

increase the bell sizes or otherwise increase the caisson dimensions as shown in the schedule, the defendants were to pay for the increased volume at a rate proportionate to the price named in "Item 1." The case was heard on the report of the auditor. The judge found for the plaintiff, and the case is here on the defendants' exceptions.

The first exception argued is to the refusal to recommit the auditor's report, the defendants contending that certain time cards were erroneously admitted in evidence before the auditor. These time cards were kept by the plaintiff's timekeeper and clerk. It was a part of his work to keep an accurate account of the work done by the plaintiff's employees. The cards contained the clerk's entries of the names of the men on the job, the time spent by them, and their compensation. The cards were kept in the usual course of business and as a part of the time clerk's regular work, and were made from personal knowledge, the entries being made on the day the work was done. The records on the back of the cards contained measurements made by the foreman and given to the timekeeper, who, with the foreman, examined those items and measurements. The timekeeper was a witness at the hearing before the auditor and the findings of the auditor as to the details of the time cards, as we construe his report, were based on the testimony of the timekeeper.

The cards were admissible at common law. The entries were in the usual course of business. The timekeeper himself saw the men at work, and the measurements made by the foreman were made in the presence of the timekeeper. *Donovan* v. *Boston & Maine Railroad,* 158 Mass. 450. See *Delaney* v. *Framingham Gas, Fuel & Power Co.* 202 Mass. 359, 366–368.

The defendants contend they were under no obligation to remove materials excavated by the plaintiff from the caisson locations. The work covered by the contract was to be done on a long narrow lot. Pumps and derricks occupying considerable space were required. Stone taken from the defendants' wall had to be removed, dirt excavated by them had to be taken away. The stone and dirt handled by the defendants were left in such a position that the plain-

tiff could not go on with its work until this material had been removed. The plaintiff's foreman requested the defendants to move some of the stone. They replied they had "no labor for that purpose" and for him to "go ahead and have it done." It was impossible, the auditor found, to determine what portion of time was spent on the rehandling of that proportion of the material which came from inside the cylinders. Under the written contract the plaintiff was to furnish tools, material and labor and "leave our excavated material on the site as dumped." The trial judge ruled that if the plaintiff dumped the material removed by it from the caisson excavations in a negligent manner and in a wholly improper place so as to interfere with its own work, it could not charge the defendants with the cost of rehandling this excavated material; and in denying the fourth request of the defendants the judge ruled that the provision of the contract giving the plaintiff the right to leave the excavated material on the site as dumped gave the plaintiff the right to dump the material as it came out of the excavation, and that it was the duty of the defendants to remove this excavated material. The auditor found that it was impossible to determine whether the plaintiff's work could have been carried on in a more efficient way.

In our opinion the rulings of the judge were accurate. The plaintiff was not required to remove the excavated material. It was to be left on the site as dumped, and the defendants were to do all necessary excavation to the grade "from which . . . [the plaintiff's] work . . . [was] to start; drill and split all stonework encountered at the caisson locations, removing all such stone as . . . [could] reasonably be reached before our cylinders are set." Considering the size of the lot, the quantity of appliances necessary to do the work, the difficulty of accomplishing it unless the excavated material were taken away, and the fact that the plaintiff was under no obligation to remove it and was to leave it on the site as dumped, it was the defendants' duty as we construe the contract to do the preliminary work so the plaintiff could proceed with the setting of the cylinders, and as this, it could be found, involved the removal of the excavated

material by the defendants, the plaintiff could recover for its labor in removing this material.

Under the fifth paragraph of the contract, if it became necessary to increase the bell sizes or otherwise "increase the caisson dimensions," the defendants were to pay the plaintiff for the increased volume at a rate proportionate to the price named in "Item 1." In some instances the size of the base was increased and this necessitated extra excavation and additional cement. The defendants contend that the caisson is merely a concrete pile resting on a concrete base; that the words "increase . . . dimensions," as used in the contract, mean the increased dimension of the concrete pile or base, and do not mean the amount of labor necessary to create the displacement or the work of excavating and back filling. The installation of the caissons could not be made unless the soil was excavated, and on conflicting evidence the auditor found that the words "caisson dimensions" included the necessary work incident to the installation of the caissons. We do not agree with the defendants' contention. By paragraph two of the contract, the plaintiffs were "to start our work from the grade of the existing basement floor, excavate the caissons to the sand and/or gravel shown by our borings." These words are not limited to the concrete structure; they include the installation, and the removal of material was a part of this work. It would be too narrow a construction and contrary to the intention of the parties, to limit these words to the amount of concrete, with no allowance for the preliminary work. By paragraph five the "increased volume" was to be paid for "at a rate proportionate to the price named in Item 1." That price included excavation as well as cement, and by reference to "Item 1," the excavation as well as the concrete was to be taken into account.

*Exceptions overruled.*