**DALLAS COFFEE & TEA CO. et al. v. WIL-LIAMS.**

No. 10906.

Court of Civil Appeals of Texas. Dallas.

Dec. 5, 1931.

Rehearing Denied Jan. 16, 1932.

R. G. Storey and Hugh S. Grady, both of Dallas, for appellants.

Chamberlain, Green & Wade and Wm. M. Cramer, all of Dallas, for appellee.

JONES, C. J.

Appellee, Jesse Williams, a colored man, in a suit in a district court of Dallas county, had a former judgment for $350 set aside, and was awarded a judgment for $1,650 against appellants, Dallas Coffee & Tea Company and the Automobile Underwriters Insurance Company, and $30 additional as punitive damages against the latter appellant for willful trespass upon his person. Appellants will hereinafter be styled the coffee company and the insurance company, respectively. An appeal has been duly perfected to this court and the following are the facts:

On December 1, 1927, appellee, an employee of a drug store in the St. George Hotel in Dallas, started from his home in East Dallas to his work, intending to board a street car at the corner of Main and Hawkins streets. At about 5:30 or 6 o'clock in the morning, and while it was still quite dark, he walked out from the sidewalk on the northeast corner of the intersection of these streets, and just as he was in the act of boarding the car which had stopped to receive him as a passenger, he was struck by a light Ford truck owned by the coffee company, and operated by one of its employees, and was either knocked or carried by the truck across the intersection of these streets just beyond the west line of Hawkins street. The driver stopped the truck just beyond where appellee was lying in Main street, and went to appellee to render assistance. The street car motorman also went to him and others gathered at the place. Appellee was taken to Parkland Hospital, owned and operated by Dallas county.

The undisputed evidence is that appellee, just after the collision and until he was received at the hospital, was in an unconscious condition. Appellee received injuries on both sides of his head and a number of body bruises, specially on one of his legs. An X-ray examination did not show any skull fracture. However, there is medical testimony to the effect that the character of X-ray picture taken would not have disclosed a lateral fracture had there been one, and medical testimony to the effect that the symptoms appellee developed, while he was at the hospital, and the symptoms shown after he left the hospital, and up to the time of the trial, were such as would be consistent with his having received a lateral fracture of the skull.

The evidence as to the mental condition of

appellee from the afternoon of December 1, 1927, until several days after he left the hospital, is in conflict. Appellee was taken from the hospital on December 23, 1927, on the insistence of his wife, Sophie Williams, and against the advice of the hospital authorities. The mental condition of appellee from the time he entered the hospital until· about the time he left is an important inquiry in this case.

On December 10, 1927, a power of attorney and an assignment of one-half of his cause of action was executed by appellee and his said wife jointly to John W. West, an attorney, and to Edmund Wiley, an employee of West. This power of attorney gave full authority to enforce appellee's claim for damages for the injuries he received against the party or parties liable therefor, either by suit or compromise, and was executed by appellee at the hospital. After he was so authorized, West, as attorney for appellee, discovered that the employer of appellee carried no workmen's compensation insurance, and that the insurance company carried liability insurance, covering such a happening as the instant one, for the coffee company. West got in communication with an authorized representative of the insurance company, with the result that a settlement was made of the claim for the payment of $350 as damages, and the further payment of hospital and medical bills. This settlement was consummated December 14, 1927, by filing suit for damages on substantially the same grounds of negligence alleged in the instant suit against the coffee company, and the immediate entry of an agreed judgment in the sum of $350 and hospital and medical bills, after an answer being filed at the same time by an attorney for the insurance company. No evidence was introduced. The amount of this judgment was immediately settled by payment into the registry of the court the sum of $350, and by the clerk of the court at once executing a check in such sum, payable to the order of West and Jesse Williams and delivery to West. West soon thereafter secured the indorsement of Jesse Williams, by his mark, and on December 19, 1927, delivered to Sophie Williams $150 of this money as Jesse Williams' part of the judgment, and took a receipt therefor, purported to have been executed by Jesse Williams and Sophie Williams, but Jesse Williams' name was written by his wife, Sophie Williams. Jesse Williams did not personally receive the $150, nor did he personally expend any part of said sum; however, his wife, without his knowledge or consent, spent a substantial portion of the money in payment of rent and in the purchase of groceries for the use of the family. This was without the knowledge or consent of Jesse Williams.

Dr. John F. Ford, at the instance of the insurance company, examined appellee at the hospital on the afternoon of the injury, and on several times subsequent to such date, and reported the result of his examinations to the insurance company. These examinations were made by Dr. Ford, without the consent of appellee or his wife, and without the specific authority of the hospital, but none of these parties made objection to such examinations. The testimony of Dr. Ford is to the effect that there were no serious injuries inflicted upon appellee by reason of the accident; that appellee, though stupid at times, which he ascribed to medicine administered, was at each time he examined him conscious and in possession of his mental faculties.

The evidence of Dr. Carpenter, who attended the appellee as his personal physician during the time he was at the hospital, is to the effect that during all of the time at the hospital he was not in such mental condition as to enable him to comprehend the nature and meaning of any character of contract. The "bedside notes," taken at the hospital by the interne in charge of appellee, are to the effect that appellee was unconscious when admitted to the hospital and did not talk rationally a great deal of the time while at the hospital. The notes taken on the last three or four days of appellee's stay in the hospital indicate an improved physical condition, but are silent as to his mental condition during such time. There is additional testimony supporting both theories as to appellee's mental condition and as to the extent of his injuries, while he was in the hospital. The evidence of J. T. Drake, employer of appellee, is to the effect that he visited appellee many times at the hospital and never found him in a conscious condition or heard him make a rational statement during such time. The evidence of Mrs. Drake is to the same effect. The evidence of West is that he was entirely conscious and rational at every time he visited him, at the time he executed the power of attorney, and at the time the money was paid.

Appellee's petition seeks to set aside the judgment entered in the district court on December 14, 1927, on the ground that fraud was perpetrated on appellee by the insurance company, for its own use and benefit, as liability insurer, in the name of the coffee company. As to the fraud perpetrated on appellee, it is alleged that, under its contract of liability insurance, the insurance company could exercise the exclusive right to effect a settlement of appellee's claim and· to defend any suit instituted thereon. This contract, however, was not introduced in evidence. The fraud is alleged to be that appellants knew at the time the power of attorney was executed, the settlement of the claim agreed upon, the agreed judgment entered in the district court, the judgment paid to West by means of the joint check to West and appellee, and the $150 paid by West to appellee's wife, and for several days thereafter appellee

was in such mental condition to be incapable of executing any contract, and was incapable of understanding any of the transactions above mentioned; that because of such mental condition he could not, and did not, know of any of these transactions. It is also alleged that, while these transactions were had purportedly in the name of the coffee company, they were actually had for the benefit of the insurance company, to satisfy its liability to the coffee company on its policy or insurance. The petition also alleged various grounds of negligence on the part of the driver of the truck, which proximately caused the injuries to appellee. It is not deemed necessary to state the allegations as to negligence. It is deemed sufficient to say that the allegations in the petition are sufficient, both to warrant the equitable relief of setting aside the judgment of December 14, 1927, and of stating a meritorious cause of action on the merits of appellee's claim for damages.

Appellants filed a plea in abatement, setting up the judgment of December 14, 1927, as a basis of such plea, and further that, under the case alleged by appellee, he could not sue to recover damages on the merits of his claim in the equitable suit brought to set aside the said judgment, for the reason that the insurance company was only a liability insurer, and even if a necessary party to set aside the judgment of December 14, it could not be made, over its objection, a party to the suit for damages. It also answered to the merits of the suit denying the alleged negligence on the part of the driver of the truck and pleading the affirmative defense of contributory negligence on the part of appellee. A great many special exceptions were directed to allegations of negligence in the petition, on the ground that such allegations were too general, vague, and indefinite to notify appellant of the ground of negligence relied upon. The plea in abatement was overruled and also the special exceptions, and error is duly assigned on each adverse ruling.

The case was tried to a jury, submitted on special issues, and on the findings of the jury on these issues, the judgment above described was entered.

The findings of the jury are supported by evidence and are adopted as the findings of this court. These findings, in effect, are: (1) Appellee did not authorize John West to represent him in the suit filed in the district court; (2) appellee did not have the mental capacity to enter into a contract of employment at the time such representation by West was authorized; (3) the insurance company, through its agents or doctor, knew that appellee had not the mental capacity to authorize West to represent him in the suit of December 14, 1927; (4) the driver of the truck failed to keep a proper lookout on the occasion in question, and (5) such failure was negligence, which (6) proximately caused appellee's injuries; (7) the driver of the truck failed to give any signal or warning of his approach immediately before the collision in question, and (8) such failure was negligence, which (9) proximately caused appellee's injuries; (10) the driver of the truck propelled the same past the street car after the street car had come to a standstill for the purpose of receiving passengers, and (11) such propelling of the truck proximately caused appellee's injuries; (12) immediately before the collision in question the driver of the truck was operating the same at a speed of thirty miles per hour, and (13) such rate of speed was negligence, which (14) proximately caused appellee's injuries; (15) the driver of the truck passed the street car at such rate of speed as to endanger the life and limb of plaintiff herein, and (16) such rate of speed proximately caused his injuries; (17) a finding adverse to appellee on the issue of discovered peril; (18) appellee was unconscious on December 10, 1927; (20) appellee did not authorize his wife, Sophie Williams, to receive the proceeds of the settlement in the district court suit on December 14; (21) appellee was crossing Main street at a right angle when he was injured; (23) appellee did not suddenly step in front of the said truck immediately before the accident; (26) appellee did not fail to look to the east for approaching traffic when he entered Main street; (28a) the collision in question was not the result of an unavoidable accident; (29) the amount of damages is the sum of $2,000; (30) the insurance company permitted a willful trespass upon the person of plaintiff through its doctor, John F. Ford; and (31) the damages resulting therefrom is the sum of $30.

Appellants have presented a great many assignments of error and make them the basis for 56 separate propositions of law, contending that each presents reversible error. A great many of the assignments, as well as the propositions, deal with the same, or kindred, subject-matter, and only a few will be separately discussed. Two general grounds of error are presented by these assignments and propositions, which call for the serious consideration of this court, viz.: Did the court err in overruling the plea in abatement? In this issue we have included the question as to appellee's right to maintain this suit on the merits of his claim against the insurance company, on the ground that it issued a policy of liability insurance to its coappellant, and is charged with the commission of fraud in procuring the agreed judgment. (b) Was it error to admit in evidence a record of Parkland Hospital, containing the "bedside notes" of the interne in charge of appellee, in reference to his condition while at the hospital? Other questions raised by assignments of error will be briefly discussed.

■ This suit is in the nature of a bill of review, to set aside a final judgment of a district court, on the ground of fraud, and to retry the cause on its merits and enter a

proper judgment thereon. In such suit the practice in this state is not only to try the equitable issues made by the allegations in the petition, stating the grounds of fraud, but at the same time to try the cause on its merits. This rule of practice is well stated by the late Chief Justice Gill in an opinion of the Galveston Court of Civil Appeals in Owens et al. v. Foley, 42 Tex. Civ. App. 49, 93 S. W. 1003, 1005, as follows: "The universal practice is to require the plaintiff in such an action to set up, not only his reasons for reopening the judgment assailed, but to so plead as to enable the trial court to determine the issues presented in the original action and render such a judgment as will be an effective substitute for the judgment set aside. Overton v. Blum, 50 Tex. 424; Roller v. Wooldridge, 46 Tex. 485; Taylor v. Fore, 42 Tex. 256." This announcement is also sustained by the following authorities: Camden Fire Ins. Co. v. Hill (Tex. Com. App.) 276 S. W. 887; Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254; Lamb-McAshan Co. v. Ellis (Tex. Com. App.) 270 S. W. 547; Cooper v. Cooper (Tex. Civ. App.) 260 S. W. 679; Reed v. Runion (Tex. Civ. App.) 269 S. W. 449; Bell v. Cobb (Tex. Civ. App.) 296 S. W. 976; Barton v. Montex Corp. (Tex. Civ. App.) 295 S. W. 950.

It is settled law that, in a suit to set aside a judgment because of fraud, all parties who are interested in the maintenance of the judgment are necessary parties. See authorities cited above. Appellee alleges in his petition, and the undisputed evidence established it as a fact, that the insurance company was the active party in securing the judgment rendered against the coffee company, and that in this matter the insurance company acted on its own initiative, without the aid or assistance of the latter company. Such action would have been entirely proper and within its contract rights under the insurance policy it had issued, if no fraud on the rights of appellee had been committed in the procurement of such judgment. The inevitable conclusion from the evidence, however, is that whatever fraud was committed in securing the entry of this judgment, such act of commission was by the insurance company and not by the coffee company. If this judgment was procured during a time appellee was mentally incapable of understanding and appreciating what was being done in the premises, then all parties concerned in the procuring of the judgment would be guilty of fraud whether they actually knew of appellee's mental condition or not. The insurance company was directly interested in the matter, because it would have to pay any judgment rendered on appellee's claim, to the extent, if necessary, of the maximum amount of the insurance policy it had issued. Being active in its procurement and interested in its validity being maintained, the conclusion is inescapable that the insurance company was a proper party to that portion of the relief sought by appellee, which had as its purpose the setting aside of the judgment entered under the compromise agreement. Was the insurance company a proper party to the other relief sought by appellee?

Under the law of this state, there can be but one final judgment in a cause, and that is such a judgment which settles finally the issues on the merits of a suit. If appellee had merely sought the relief of setting aside the compromise judgment, his petition not only would have to contain the same allegations of fraud, but would also have had to contain the same or similar allegations on the merits that are set up in the instant suit. No litigant can set aside a voidable judgment on the ground of fraud, unless he shows by proper pleading that he is entitled to the other and additional relief of which he had been deprived by reason of the commission of the fraud alleged. Owens et al. v. Foley, supra. If the judgment in the instant case had only gone to the extent of setting aside the compromise judgment, there would have remained the untried issues as to the amount of damages, if any, appellee would have been entitled to, by reason of the alleged negligence, and the judgment setting aside the former judgment would not have been final. Owens et al. v. Foley, supra. We therefore are of opinion that appellee's allegations of fraud were sufficient, if established by evidence, to avoid the former judgment that the insurance company was a necessary party to secure such relief, and that it was the proper procedure to try the merits of the case at the same time the equity part of the case was tried.

 Was the insurance company improperly joined as a party to the suit on its merits? It is settled law in this state that, in a suit against the insured for damages, resulting from a tort, the insurer is not a proper party. Levinski v. Cooper (Tex. Civ. App.) 142 S. W. 959; Lange v. Lawrence (Tex. Civ. App.) 259 S. W. 261; Water, Light & Ice Co. v. Barnett (Tex. Civ. App.) 212 S. W. 236; Lone Star Gas Co. v. Coates (Tex. Civ. App.) 241 S. W. 1111; Gose v. Ballard (Tex. Civ. App.) 12 S.W.(2d) 1067.

It is also the law in this state that, if the insurer takes full charge of the suit against the insured to the exclusion of the insured from its control or management, any judgment rendered against the insured under such a condition becomes, in legal effect, a judgment against the insurer. American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S. W. 908, 37 A. L. R. 633; Automobile Underwriters' Ins. Co. v. Murrah (Tex. Civ. App.) 40 S.W.(2d) 233, writ of error denied.

The insurance company not only took full charge of the claim of appellee when it was first presented, and full responsibility for the compromise judgment entered, but also took full charge of the instant case, the same

firm of attorneys that secured the compromise judgment also represented the insurance company in the instant case, and no other attorneys appeared in the case for appellants. Unless the insurance company, as between it and its coappellant, the Dallas Coffee & Tea Company, admitted its unconditional liability to the latter company, for any judgment rendered against the former, there would have been such a conflict of interest between the two appellants that the same firm of attorneys could not have represented both appellants. Whether the insurance company had been a party defendant in the instant suit or not, it would have been, in legal effect, a suit against the insurance company made so by the voluntary acts of such company.

The question now under review presents a condition in which the insurance company, after the happening of the event which matured appellee's cause of action against the coffee company, although interested in the subject-matter of the suit, was not in any sense a proper party defendant in a suit to enforce appellee's claim. However, instead of allowing its status to remain such, it voluntarily took upon itself, as it had a right to do, the burden of appellee's claim, and entered into negotiations for its settlement. Under the allegations in appellee's petition and under the facts found by the jury, it procured the entry of a purported compromise judgment in fraud of appellee's right, for a much less sum than appellee was entitled to, and paid from its own fund, without consultation with the coffee company, the amount of such judgment. When this suit was instituted, it took upon itself the entire burden of its defense and once again made appellee's claim against the coffee company its own claim. Having conducted itself in such a manner as to render it a necessary party in a suit to set aside the compromise judgment, the insurance company cannot complain because it is made a party to the same suit on its merits. We are of the opinion that this case presents an exception to the rule of law announced, by the cases heretofore cited, as to the status of a liability insurer in a suit against the insured. All assignments of error in this respect are overruled.

 Over the objection of appellants that the record of Parkland Hospital, containing notes as to the condition of appellee while in said hospital, was hearsay, not made by the witness, who had no personal knowledge thereof, and further that the testimony is immaterial, irrelevant, and prejudicial to the rights of appellants, such record was admitted in evidence. Dr. Stevenson, the superintendent of the hospital, at the time appellee was admitted and at the time of the trial, testified in effect that the document offered in evidence was made from day to day, under the regular routine of hospital work, while appellee was a patient there; that it was author-

ized to be made by him and was made under his supervision, by a Dr. Chandler, then an interne at the hospital and authorized to make the notes; that Dr. Chandler resided outside of the state, somewhere in the state of Oklahoma, his address not being known; that the document was on file in the hospital, and remained in the hospital in his custody from the time the notes were taken. He further testified that he never examined appellee during the time and personally knew nothing of his condition.

There are parts of the record, over the subject-matter of which there exists a sharp controversy as to the existence of the facts therein stated. This part of the record shows that, at the time appellee was admitted to the hospital, he was bleeding from the ears and unconscious; and it further shows that, from time to time, he was not rational during times vital to this case, on the issue of fraud, and if inadmissible its admission is reversible error.

The proof offered was sufficient to admit the record in evidence, if it is a public record, but wholly insufficient to admit it in evidence if it cannot be brought within that rule. 22 C. J. 801, § 914, announces the following generally accepted rule as to the admission of public records or documents: "A record or document kept or prepared by a person whose public duty it is to record truly the facts stated therein is, when relevant, admissible as prima facie evidence of such facts, although the statements therein were made extra-judicially by a person not under oath and not subject to cross-examination, and the person who made the record may have had no personal knowledge of the matters recited, provided it was made originally with the intent that it should be kept as a memorandum to be referred to and used as evidence." The same authority, in the succeeding section at page 805, states that the rule above announced is applicable to state hospital records. The evidence shows that Parkland Hospital, where appellee was confined, is the character of hospital authorized by the provisions of chapter 5, title 71, of our Revised Statutes (article 4478 et seq.), and, therefore, comes within the rule above announced. The provisions of that chapter provide for a board of managers and direct such board to elect a superintendent of the hospital. Article 4485 of such chapter defines the duties of the superintendent, among which is the following: "He shall cause a careful examination to be made of the physical condition of all persons admitted to the hospital and provide for the treatment of each such patient according to his need; and shall cause a record to be kept of the condition of each patient when admitted and from time to time thereafter." It thus appears, both from the statute and from the regulations promulgated by the superintendent in obedience to this statute, that Parkland Hospital was required to make and keep with-

*Sed quære*

in its files the very record offered in evidence. This record, therefore, is a public document or record required by law to be made and kept by those holding a public position within this state.

In the state of Massachusetts and a few other states, the record of a state hospital is made evidence by statute. Delaney v. Framingham Gas Co., 202 Mass. 359, 88 N. E. 773. There is no provision in said chapter 5 specifically providing that the record required to be kept by the hospital shall be admitted in evidence. Parkland Hospital, however, is a public institution, and we do not believe the intention of the Legislature, in requiring "a record to be kept of the condition of each patient when admitted and from time to time thereafter," was restricted in purpose for the private use of the hospital, but was to give to such a record the full status of a public record, and thereby made such a record admissible in evidence.

The rule above announced does not apply to private hospitals the record of whose patients is not required to be kept by law. The general rule as to the admission in evidence of records of such a hospital is announced by 22 C. J. 902, § 1100, as follows: "In the absence of a statute, hospital records are as a rule, although not invariably, held not admissible as evidence of the facts therein stated. Such records are sometimes made evidence by statute." But without such a statute, the record of private hospitals, though required to be made by hospital regulations, are not admissible in evidence. Barfield v. South Highlands Infirmary, 191 Ala. 553, 68 So. 30, Ann. Cas. 1916C, 1097; Ribas v. Revere Rubber Co., 37 R. I. 189, 91 A. 58. The general rule, however, is to the contrary. Osborne v. Grand Trunk Ry. Co., 87 Vt. 104, 88 A. 512, Ann. Cas. 1916C, page 74, and authorities cited in notes on pages 78 and 79. We therefore are of the opinion that the admission of the hospital record was not subject to the objection made, and that the court did not err in its admission, and overrule all assignments of error in this respect.

There are a number of assignments of error overruling special exceptions. We have carefully examined these and, while some of the exceptions, perhaps, should have been sustained, it does not appear that appellants suffered any injury through the ruling of the court thereon. A physician of their own selection examined appellee, from time to time, while he was in the Parkland Hospital, and the inference is that he reported appellee's condition to his employers. All such assignments of error are overruled.

■ We are of the opinion that the assignment of error as to the punitive damages of $30, found in favor of appellee by the jury, for willful trespass upon the person of appellee, must be sustained and the judgment of the court must be reformed so as to exclude this item of damages. The evidence on this issue is given above and does not tend to show a willful trespass. We have carefully examined all other assignments of error, with the result that we are of the opinion that none of them show reversible error.

■ Appellee has filed a cross-assignment of error, because of the action of the court in deducting from $2,000, the amount of damages found by the jury, the sum of $350, the amount of the award to appellee in the compromise judgment of December 14, 1927. The evidence in respect to the disposition of this $350 paid by the insurance company is undisputed; $150 was paid to Sophie Williams, appellee's wife, by Mr. West, the attorney securing the judgment; $175 was retained by Mr. West under his contract as remuneration for his services. No part of the $150 received by Sophie Williams ever went directly into the hands of appellee, but a substantial part thereof was used by Sophie Williams to pay rent and to buy groceries; in other words, used by her as a member of the community estate existing between her and her husband, for the necessities of life, and appellee thereby received the benefit of the $150. As we understand the decisions in this state, notwithstanding the fact that appellee was in such mental condition that he was incapable of transacting any business for himself, or for the benefit of the community during the time the contract was executed, the judgment rendered, and the $150 paid and expended, nevertheless, as he received the benefit of it through his wife's providing for the necessities of life, equity, though not requiring him to tender it back as a condition precedent to the suit, requires him to allow credit for the $150 on the damages adjudged to him. We do not believe that, under this record, he is required to refund the attorney fee paid to West, or the $25 expended by some one in some other way, and not shown to have come to him or to have been used for his benefit. Mitchell v. Inman (Tex. Civ. App.) 156 S. W. 290; Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115; Brown v. Brenner (Tex. Civ. App.) 161 S. W. 14; Rowan v. Hodges (Tex. Civ. App.) 175 S. W. 847; Shaw v. Gillespie (Tex. Civ. App.) 270 S. W. 1043.

■ Appellant Dallas Coffee & Tea Company duly filed a motion in this cause, after the appeal was perfected, requesting that the court adjudicate it as a surety on the supersedeas appeal bond, as between it and the American Surety Company, appearing on such bond as surety. Consideration of this motion was passed by this court until the main case was submitted. The grounds on which this motion is urged are alleged to be that the insurance company carried liability insurance in favor of the coffee company, and that under the terms of the insurance policy the insurance company was liable for the judgment rendered; that such insurance com-

pany prosecuted this appeal without consulting the coffee company, and against such company's best interest, which did not desire that an appeal be taken, but preferred that the judgment be discharged, and that the insurance company alone requested the American Surety Company to sign the bond as surety and alone paid the fee charged therefor; that since the perfection of the appeal, the insurance company has failed and gone into the hands of a receiver, and is unable to respond to the judgment.

It appears from a statement of the case that the facts alleged will have to be established in a court of competent jurisdiction, before it can be determined that such relief can be granted, and are such as cannot be first established in an appellate court. Under the record before us, the American Surety Company is only a surety, and the coffee company is one of the principals, and judgment must be entered in this court in accordance with this record. So the motion is dismissed for want of jurisdiction, without prejudice to the coffee company, to present the matter at a proper time and before a proper jurisdiction.

We conclude, therefore, that the judgment entered in favor of appellee against appellants for the sum of $1,650, with interest at the rate of 6 per cent. per annum, should be reformed and appellee given judgment for $1,850; that judgment against the insurance company for $30 as damages for trespass should be denied. The judgment of the district court, awarding appellee $2,000 is actual damages for the injuries received and $30 additional as punitive damages, because of a willful trespass committed by the insurance company, and from this sum making a deduction of $350, is reformed so as to deny appellee a recovery of the $30 punitive damages, and to allow him recovery of $2,000 less $150, with interest thereon from May 30, 1930, the date of the judgment in the district court, at the rate of 6 per cent. per annum, and it is so ordered.

Reformed and affirmed.